**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**BOARD OF TRUSTEES OF CROSBY INDEPENDENT SCHOOL DISTRICT, HARRIS COUNTY, TEXAS, et al., Defendants-Appellees, Cross-Appellants.**

**No. 29286.**

United States Court of Appeals,
Fifth Circuit.

April 6, 1970.

John M. Rosenberg, Thomas M. Keeling, Brian K. Landsberg, Attys., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Jerris Leonard, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Joe H. Reynolds, Houston, Tex., for defendants-appellees, cross-appellants.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

On January 7, 1970 the United States District Court for the Southern District of Texas entered an order adopting a school desegregation "pairing plan"[1] applicable to the Board of Trustees of Crosby Independent School District in Harris County, Texas. In accordance with our decision in Singleton v. Jackson Municipal Separate School District,[2] decided on December 1, 1969, the district court allowed a delay of student desegregation until September 1, 1970.[3] On January 14, 1970 the Su-

1. The court adopted the plan offered by the government. It was developed by experts from HEW and the Texas Educational Desegregation Technical Assistance Center (TEDTAC).

2. 419 F.2d 1211 (5th Cir. 1969).

3. On November 19, 1969, the district court entered an order stating that a plan to abolish the dual school must be adopted and implemented "at once." The order was modified in accordance with our decision in *Singleton* prior to its reversal

preme Court reversed our *Singleton* decision insofar as it deferred student desegregation beyond February 1, 1970.[4] On January 19, 1970 the government filed a motion in the district court to amend its order of January 7, 1970 accordingly. The government appeals from a denial of that motion. The government has requested an expedited appeal and a summary reversal. We have granted the former [5] and now grant the latter. We have before us the full record in the case and the briefs of all parties concerned.

The parties agree that the sole question presented by the government's appeal is whether the district court erred in delaying pupil desegregation until September 1, 1970 in the absence of any evidence of impracticality of immediate student desegregation. The Board of Trustees of Crosby Independent School District has cross-appealed contending that the court erred in ordering a plan of desegregation which would compel the "busing" of students in contravention of the Civil Rights Act of 1964. The government contends that the plan would only "increase the number of students transported to school."

The record reveals that there are two groups of schools or two campuses in the Crosby Independent School District. One is substantially all white and the other is all black. The factual and physical situation in the instant case is remarkably similar to that which was involved in Green v. School Board of New

Kent County.[6] The school district under consideration is a small one. It contains only 2,119 students of which 49.70% are Negroes. There are two principal communities in the entire district. These two communities are only four miles apart. In the Crosby community there are three schools on one campus (Crosby Senior High, Crosby Junior High, and Crosby Elementary), all of which are predominantly white. There are only 111 Negroes enrolled on the Crosby campus. The other community is known as Barrett Station in which two schools are operated (Drew Elementary and Drew Junior-Senior High School), both of which are all Negro. The district court found as a fact that this case "involves a dual school system within the most precise meaning of that term possible."[7]

■ We feel it appropriate to state at the outset that we do not believe that the transportation of students as required by the plan adopted by the district court involves the Civil Rights Act of 1964 as contended by the School Board. There has been in existence for some time a school transportation system and students have been regularly transported to all black and to predominantly white schools. Pairing under the court's order would necessarily require some change in transportation routes and practices. The record discloses that the school system here involved is possessed of ample transportation facilities. Six buses are regularly used. In addition there are three operable buses

---

in Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970).

4. Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970).

5. The appeal was expedited in accordance with the procedure outlined in Section III of *Singleton*, 419 F.2d at 1222.

6. 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

7. The following is from the court's opinion dated November 19, 1969:
    * * * [the] undisputed statistics [of students and faculty] * * *

show a low degree of integration within the schools * * * In summary, they reveal that for the present school year, approximately ten percent of all Negro students attend the predominantly white Crosby schools, and that no white students attend classes at Drew [the all-Negro schools]. The faculty is similarly segregated, with three full-time Negro teachers out of fifty-four teachers at Crosby, and two full-time white teachers out of fifty-one teachers at Drew.

which are not being used. The plan involved only requires the use of transportation facilities along with all other facilities to achieve a unitary school system. As we stated in *Singleton*: [8]

> Many students must transfer. Buildings will be put to new use. In some instances it may be necessary to transfer equipment, supplies or libraries. *School bus routes must be reconstituted.* (Emphasis added)

Consequently, we find no merit in the contention of the Board of Trustees.

On the other hand, we cannot approve the action of the district court in refusing to comply with the mandate of the Supreme Court in *Carter*. Accordingly, the order of the district court refusing to modify its order delaying school desegregation until September 1, 1970 is vacated.

We are aware of the fact that little time is left of the 1969–70 school term. Nothing could be accomplished by requiring an upheaval and shift of students from one school to another this late in the school year. It is regrettable that the present situation has been permitted to develop. We do not approve of such action but decline to disturb the school system before the conclusion of the present term.

The Supreme Court held in Alexander v. Holmes County Board of Education,[9] that school districts "may no longer operate a dual school system based on race or color, and direct[ed] that they begin immediately to operate as unitary school systems within which no person is to be effectively excluded from any school because of race or color." Thus, it is clear

that the principle of "deliberate speed" has served its usefulness and is no longer applicable. The district court in this case has only one course of action to follow with respect to the desegregation of the school system involved and that is to take immediate action now, as required by Carter v. West Feliciana School Board.[10] Accordingly, no later than June 1, 1970 the plan submitted by HEW and approved by the district court must be fully and completely implemented. The plan will apply to any summer schools which may be conducted. The district court will require the school board to make a full report as to specific action taken and to outline exactly how and in what manner it proposes to implement the approved plan, including the names of teachers who are to be transferred, the places they are to teach, the classrooms to be used, and all other factors which must be resolved in the full implementation of the plan. All of the foregoing shall be accomplished to the end that all court procedure will have been completed and the plan fully implemented without doubt and delay as herein directed. This directive is fully supported by *Carter*:

> Alexander makes clear that any order so approved should thereafter be implemented in the minimum time necessary for accomplishing whatever physical steps are necessary to permit transfers of students and personnel or other changes that may be necessary to effectuate the required relief. * * * [I]n no event should the time from the finding of noncompliance with the requirements of the *Green* case to the time of the actual

8. Singleton v. Jackson Municipal Separate School Dist., 419 F.2d 1211, 1217 n. 1 (5th Cir. 1969).

9. 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969).

10. 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed. 2d 477 (1970). In his concurring opinion in *Carter*, Mr. Justice Harlan explained the meaning of *Alexander*:

> The intent of *Alexander*, as I see it, was that the burden in actions of this type should be shifted from plaintiffs,

seeking redress for a denial of constitutional rights, to defendant school boards. What this means is that upon a prima facie showing of noncompliance with this Court's holding in Green v. New Kent County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), sufficient to demonstrate a likelihood of success at trial, plaintiffs may apply for immediate relief that will at once extirpate any lingering vestiges of a constitutionally prohibited dual school system. *Id.* at 479.

operative effect of the relief, including time for judicial approval and review, exceed a period of approximately eight weeks. This, I think, is indeed the "maximum" timetable established by the Court today for cases of this kind.[11]

The mandate herein shall issue immediately and no stay will be granted for filing Petition for Rehearing or Petition for Writ of Certiorari.

This cause is remanded to the district court for proceedings not inconsistent with this opinion.

Remanded.

11. Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477, 480 (1970) (concurring opinion of Mr. Justice Harlan).