Jeremiah **TAYLOR** et al., Plaintiffs-Appellants,

v.

**OUACHITA PARISH SCHOOL BOARD** et al., Defendants-Appellees.

No. 29215.

United States Court of Appeals, Fifth Circuit.

April 13, 1970.

George M. Strickler, Jr., Collins, Douglas & Elie, New Orleans, La., for plaintiffs-appellants.

Albin P. Lassiter, Dist. Atty., Fourth Judicial District, Monroe, La., for defendants-appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

This is an appeal from an order of the District Court dated January 30, 1970, which adopts a school desegregation plan for the Ouachita Parish School System proposed by the appellee school board.[1] It is before us on appellants' motion for summary reversal.

In Hall et al. v. St. Helena Parish School Board, 5 Cir. 1969, 417 F.2d 801, the freedom-of-choice method of pupil assignment for Ouachita and other Louisiana systems was rejected by this Court. On August 30, 1969, the District Court approved a school board plan which called for the integration of all white elementary schools (grades 1–6) by assigning students to the schools in the area where they live. The black schools were allowed to remain all-black and except for those elementary students living in the vicinity of white elementary schools, students continued to be assigned by freedom-of-choice. The plan did incorporate a proposal for the integration of all schools in 1970–71.

An appeal from the August 30th order was pending when the Supreme Court decided Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19. Appellants moved for summary reversal in this and three consolidated cases in light of *Alex-*

*ander.* In the meantime, this Court held in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1969, 419 F.2d 1211 (En banc school cases) that pupil desegregation should be postponed until September, 1970, but that faculty desegregation should be effected no later than February 1, 1970. On December 9, 1969, the District Court's orders in this and the three consolidated cases were summarily reversed and *Singleton* relief was ordered. Johnson v. Jackson Parish School Board, 5 Cir. 1969, 420 F.2d 692.

On January 14, 1970, the Supreme Court reversed Singleton insofar as it deferred student desegregation beyond February 1, 1970, Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608. Acting on appellants' motion this Court granted *Carter* relief in this case on January 26, 1970.

On January 30, 1970, the District Court issued the order here appealed from, approving a desegregation plan submitted by the Ouachita Parish School Board.

The Ouachita Parish School system consists of thirty-three schools and enrolls approximately 13,281 white students and 4,646 black students. The system serves rural and urban areas surrounding the City of Monroe which maintains a separate municipal school system. Twenty four of the Parish system's schools and approximately 84% of its students are located in the urban areas.

The parish is divided into quadrants by natural boundaries: the Ouachita River runs north-south, dividing the parish into east-west sections; Interstate Highway 20 runs east-west, dividing the parish into north-south sections. Both the school board plan adopted by the Dis-

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, which this Court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852, and of Carter v. West Feliciana Parish School Board, 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477, implemented in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 425 F.2d 1211, this Court has judicially determined

that the ordinary procedures for appellate review in school desegregation cases have to be suitably adopted to assure that each system whose case is before us, "begin immediately to operate as unitary school systems." Upon consideration of the parties' memoranda and so much of the record as is available or determined to be needed by the Court, the Court has proceeded to dispose of this case as an extraordinary matter. Rule 2, F.R. A.P.

trict Court and the plan submitted by HEW refer to the resulting quadrants as follows: Zone I (east of the river, south of Interstate 20); Zone II (east of the river, north of Interstate 20); Zone III (west of the river, north of Interstate 20); and Zone IV (west of the river, south of Interstate 20).

Although the plan submitted by the school board and adopted by the District Court differs from the HEW plan with respect to Zones III and IV on the west side of the river, it is uncontested that there is now a unitary system in operation in those two zones. However, appellants object to the plan insofar as it relates to the two zones lying east of the river because the plan calls for retention of three all-black or nearly all-black schools. The three schools—Booker T. Washington Elementary, Swayze Elementary and Richwood High School—enroll approximately 35% of the black students in the parish.

 Under the HEW plan Richwood High was to be the only high school in Zone I and it would draw students from all the junior high schools in the zone.[2] There is no question that Richwood has a capacity sufficient to handle all the high school students in Zone I. Under the plan adopted by the District Court a sub-zone for Richwood was carved out of the middle of Zone I. The population of this zone is overwhelmingly black and under this plan Richwood remains an all-black school. White students graduating from Logtown High School (south of the Richwood Zone) are to be bussed past Richwood approximately 20 miles to Ouachita High School (in Zone II), as opposed to the 10 mile bussing to Richwood under the HEW plan. When questioned by the District Judge as to why the Logtown area students should be transported 20 miles to Ouachita High rather than 10 miles to Richwood, the Superintendent of the School System of Ouachita Parish stated that it was the desire of the biracial committee to maintain the "identity" of the Richwood school. This explanation does not overcome the "heavy burden upon the board" to justify "its preference for an apparently less effective method" in the face of the more promising course of action which is available in the HEW plan. Green v. New Kent County School Board, 1968, 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716. Since the HEW plan is the only one currently available that gives any promise of ending the dual system with respect to Richwood High we must order its implementation. United States v. Board of Education of Baldwin County, 5 Cir. 1970, 423 F.2d 1013.

Swayze Elementary is also located in Zone I. It forms a triangle in the city area of the zone with the Shady Grove and Robinson Elementary Schools, the schools being roughly two miles apart. The HEW plan paired these three schools. The Board plan zoned them geographically. The following are the projected student distribution figures under both the Board plan adopted by the District Court and that submitted by HEW.

### DISTRICT COURT PLAN

| | | Students | | |
|---|---|---|---|---|
| School | Grades | White | Negro | Total |
| Shady Grove | 1–6 | 346 | 184 | 530 |
| Swayze | 1–6 | 20 | 514 | 534 |
| Robinson | 1–6 | 250 | 225 | 475 |

### HEW PLAN

| School | Grades | White | Negro | Total |
|---|---|---|---|---|
| Shady Grove | 1–3 | 200 | 305 | 505 |
| Swayze[3] | 4–6 | 200 | 345 | 545 |
| Robinson | 7–9 | 240 | 325 | 565 |

2. Under the HEW plan each of the 4 zones was to have only a single high school.

3. HEW later modified its plan so that Robinson would house grades 7 and 8.

The District Court found that the HEW plan would cause an increase in bussing and that as much integration would be in effect under the Board's plan as under the HEW plan. We do not agree with these findings [4] but we nevertheless sustain the adoption of the Board's plan over the HEW plan as it relates to the Swayze-Shady Grove-Robinson area. It is uncontradicted that under the plan adopted by the District Court the bussing of children to the three schools in question here will virtually be eliminated as all students will be within the one mile walking distance under state law. Furthermore, no student will have to cross U.S. Highway No. 165 as many would have to do under the HEW plan. While the crossing of a busy highway and proximity of residences are factors which cannot justify failure to promote effective desegregation, United States v. Indianola Municipal Separate School District, 5 Cir. 1969, 410 F.2d 626, 628, the mere presence of these factors in a school board's considerations cannot vitiate a plan which does tend to establish a unitary system. In addition, the Robinson school is not well suited to house grades 7 through 9 because it lacks a gymnasium facility. We therefore conclude that while the plan adopted by the District Court is not perfect as it relates to the Swayze-Shady Grove-Robinson area, it goes as far is practically possible under present circumstances to effect desegregation. Of course the District Court will retain jurisdiction to meet new situations as they arise and to allow modification of the present plan as it relates to this area if and when better proposals are advanced.

The third part of the plan adopted by the District Court to which appellants object is that which relates to Booker T. Washington, an elementary school in Zone II. It is located in the midst of a Negro neighborhood and under the Board's plan about 551 of its students would be black and at most 20 would be white. The capacity of the school is about 660. Under the HEW plan Booker T. Washington would be closed (to be reopened later as a vocational-technical school) and the students bussed to Ouachita Junior High and Lakeshore and Jack Hayes elementary schools.

Appellants urge that the plan for Booker T. Washington offers no prospect for working either now or in the future and that alternatives to the HEW plan, such as the transfer of white students into the school, which is well under capacity, have not been explored by the Board. Appellants then urge in accordance with United States v. Board of Education of Baldwin County, *supra*, 5 Cir. 1970, 423 F.2d 1013 at 1014 that "[s]ince the HEW plan is the only one currently available that gives any promise of ending the dual system, we must order its implementation despite its defects."

We agree that the Booker T. Washington situation cannot remain as it is. However, on the basis of the record before us we cannot order implementation of the HEW plan insofar as it relates to the closing of this school and the transfer of its pupils to Ouachita Junior High and Lakeshore and Jack Hayes Elementary schools because the record is clear that the capacity of the three proposed transferee schools is insufficient to absorb the approximately 550 students from Booker T. Washington. We cannot order that students be sent somewhere where there simply is no room for them.

---

4. That the Board's plan will not effect as much integration as HEW's is clear from a look at the figures above. However, substantial integration is accomplished under the District Court's plan or we would not approve it.

The District Court was not quite accurate in stating that HEW's plan required an increase in bussing over that which existed previously. There is uncontradict-ed testimony that under the HEW plan there would be no more bussing, and possibly less, than previously existed in the Swayze-Shady Grove-Robinson area. However, the Board's plan, adopted by the court, eliminates most of the bussing in this area according to the uncontradicted testimony of Mr. Lancaster, Superintendent of the Ouachita Parish School System.

Since there is no plan currently available which gives any promise of ending the dual system with respect to Booker T. Washington, we must allow the plan to stand as it is for the present. However, Alexander v. Holmes County Board of Education, *supra;* United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852; and Singleton v. Jackson Municipal Separate School System (and consolidated cases en banc), *supra,* mandate that "effective immediately * * * school districts * * * may no longer operate a dual school system based on race or color," and that they must "begin immediately to operate as unitary school systems within which no person is to be effectively excluded from any school because of race or color." Therefore, with respect to the part of the plan affecting Booker T. Washington Elementary, the parties are ordered to submit further proposals to the District Court to effect desegregation of the school.

We do not intend to reject the idea in the HEW plan of closing Booker T. Washington. In fact, this idea was originally incorporated in one of the earlier school board plans. We express no opinion on the best way to effect a unitary system; we merely cannot allow a school to be closed when there is apparently no place to send the students.

We have not overlooked the fact that the school board objected strenuously to the HEW plan with respect to Booker T. Washington because the bussing of 550 students out of the area would require the purchase of about six new busses and a cost of in the neighborhood of $70,000 to $90,000, a sum the Board cannot afford at this time. The evidence on this point was conflicting, but even if viewed most favorably to the Board's position, these estimates will have to be lowered considerably, if not eliminated, in light of our approval of the Board's plan with respect to the Swayze-Shady Grove-Robinson schools, which eliminates nearly all bussing in that area.

In view of the foregoing, it is ordered:

1. Appellants' motion for summary reversal is granted with respect to the plan adopted by the District Court insofar as it relates to the Richwood High area and the HEW plan is to be implemented immediately.

2. The motion for summary reversal is denied and the adoption of the School Board's plan is affirmed insofar as it relates to the Swayze-Shady Grove-Robinson area.

3. There being no plan in the record from which it appears to us that Booker T. Washington can be effectively desegregated, the motion for summary reversal is denied and the District Court's plan shall be permitted to stand temporarily. However, the parties are ordered to submit further proposals to the District Court by April 20, 1970, and the Court is directed to hold expedited hearings on the issue.

4. We cannot tell from the record whether the plan adopted by the District Court contains a majority to minority transfer provision. It should do so in order to alleviate segregation which still remains in the system as the result of residential patterns. *See* Ellis v. Board of Public Instruction of Orange County, 5 Cir. 1970, 423 F.2d 203. If there is no such provision, the District Court is ordered to include one in the plan it adopted, effective immediately.

5. Apart from the hearings ordered in paragraph 3, above, the District Court is directed to retain jurisdiction and to schedule expedited hearings for such modifications to the plan as may be necessary to correct unworkable elements in the plan and to allow the parties an opportunity to suggest improvements in the plan in the light of the actual workings of the plan to the end that student bodies will be more effectively desegregated.

6. The mandate herein shall issue immediately and no stay will granted for filing Petition for Rehearing or Petition for Writ of Certiorari.

Affirmed in part, reversed in part and remanded with directions.