**Jimmy ANDREWS et al., Plaintiffs-Appellants,**

v.

**CITY OF MONROE et al., Defendants-Appellees.**

No. 29358.

United States Court of Appeals, Fifth Circuit.

April 23, 1970.

George M. Strickler, Jr., Collins, Douglas & Elie, New Orleans, La., Richard B. Sobol, Washington, D. C., Jesse N. Stone, Jr., Shreveport, La., Jerris Leonard, Asst. Atty. Gen., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C. for appellants.

John F. Ward, Baton Rouge, La., for appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Suffice it to say, without relating the prior history of this school desegregation case, that we are now called upon to review, on plaintiffs-appellants' motion for summary disposition, an order of the District Court which adopted a plan of desegregation for the City of Monroe School System. We are concerned here only with whether the plan accomplishes the desegregation of students since the plan is not attacked as it relates to the other five particulars of a unitary system.

*See* Ellis v. Board of Public Instruction (Orange County), 5 Cir. 1970, 423 F.2d 203.[1]

The following chart shows a breakdown of the three plans which are before us:

| SCHOOLS | PLAN I (SCHOOL BOARD PLAN) | | PLAN II (HEW PLAN) | | PLAN III (COURT COMPROMISE PLAN) | |
|---|---|---|---|---|---|---|
| | White | Negro | White | Negro | White | Negro |
| **ELEMENTARY** | | | | | | |
| Barkdull Faulk | 201 | 71 | 246 | 65 | 190 | 77 |
| Berg Jones | 82 | 210 | 295 | 115 | 82 | 198 |
| Carver | 22 | 437 | 255 | 266 | 229 | 176 |
| Clara Hall | 435 | 84 | 255 | 266 | 304 | 204 |
| Clark | 0 | 924 | 160 | 458 | 148 | 521 |
| Georgia Tucker | 241 | 60 | 90 | 260 | 80 | 248 |
| Lexington | 626 | 0 | 590 | 145 | 612 | 55 |
| Lida Benton | 235 | 57 | 277 | 85 | 240 | 57 |
| Lincoln | 0 | 975 | 208 | 603 | 0 | 994 |
| Minnie Ruffin | 300 | 6 | 310 | 100 | 226 | 175 |
| Sallie Humble | 474 | 86 | 522 | 175 | 474 | 160 |
| Sherrouse | 264 | 84 | 104 | 370 | 264 | 132 |
| **SECONDARY** | | | | | | |
| Jefferson, Jr. | 404 | 113 | 388 | 275 | 402 | 116 |
| Lee Jr. | 540 | 121 | 331 | 450 | 566 | 130 |
| Neville Sr. | 1,049 | 160 | 730 | 705 | 836 | 495 |
| Wossman Sr. | 712 | 201 | 553 | 279 | 439 | 304 |
| Carroll Jr. | 93 | 946 | 431 | 625 | 487 | 1,241 * |
| Carroll Sr. | 136 | 1,027 | | | | |

———◆———

Plan #I was devised by two experts who were called in by the School Board and who drew geographical zone lines based solely on the distribution and location of pupils, the capacities of the schools near them, and natural and geographical boundaries. The experts did not know the race of any of the pupils they designated to any school. This plan is said by the Board to accomplish a

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, which this Court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852, and of Carter v. West Feliciana Parish School Board, 5 Cir. 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 [January 14] implemented in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, this Court has judicially determined that the ordinary procedures for appellate review in school segregation cases. have to be suitably adopted to assure that each system, whose case is before us, "begin immediately to operate as unitary school systems". Upon consideration of the parties' memoranda and so much of the record as is available or determined to be needed by the Court, the Court has proceeded to dispose of this case as an extraordinary matter. Rule 2, F.R.A.P.

* Under Plan III Carroll High School was to be converted to a junior high school which would enroll all ninth grade students in the system and seventh and eighth grade students from a zone. Under the plan the 9th grade at Carroll would enroll 487 whites and 398 Negroes. The seventh and eighth grades would enroll 863 Negroes.

"neighborhood" school system. Plan #II is that which was submitted to the District Court by HEW. It, too, is based upon geographical zoning but in addition relies upon "pairing" of schools within a particular zone to accomplish desegregation.

On February 11, 1970, the District Court entered an order rejecting the HEW plan because "although the HEW plan would presumably create a unitary school system for this School system, the Court has concluded that the educational, administrative and economical unsoundness of certain portions thereof justify the Court in rejecting said plan * *." The District Court further felt constrained, "because of recent pronouncements of the United States Court of Appeal (sic) for the Fifth Circuit and the United States Supreme Court, to also reject the Board's plan," (i. e., Plan #I). Accordingly, the court took elements of both the HEW plan and the School Board plan and devised a plan to "create a racially non-discriminatory unitary school system * * *." This is Plan #III.

However, on February 24, 1970, before Plan III was implemented, the District Court entered an order which vacated its prior order adopting the compromise plan, and adopted Plan I, the School Board's plan. The reason given for vacating the prior order and adopting the School Board's plan was that the intervening decisions of Bivins v. Bibb County Board of Education, 5 Cir. 1970, 424 F.2d 97 and Ellis v. Orange County, *supra,* convinced the District Court that the School Board's neighborhood school plan was constitutionally permissible.

We cannot agree that Plan #I is constitutionally sufficient. We note first that the criteria used to draw the zone lines in the Monroe City neighborhood school plan were (1) proximity of students to schools serving their grade level; (2) capacity of such schools; and (3) manmade and natural boundaries such as thoroughfares, railroad tracks, creeks, etc. The presence of the zone lines and of the third criterion precludes the School Board's plan from coming within the purview of a true "neighborhood system" as defined by Ellis v. Orange County, *supra, Orange County* held that

> [T]he neighborhood system, based on school capacity, must be observed *without exception.* This will prevent any variance based on traffic conditions * * * or by zone line locations * * *. *Variances by arbitrary zone lines, or for reasons of traffic, while reasonable on their face, may destroy the integrity and the stability of the entire assignment plan.* If Orange County wishes to maintain a neighborhood assignment system, then it must do so without variances. *Each student in the system must be assigned to attend the school nearest his or her home, limited only by the capacity of the school, and then to the next nearest school. Id.* at p. 207 of 423 F.2d (Emphasis added).

However, we do not reject the School Board's plan solely on the ground that it does not fit the *Orange County* definition of a "neighborhood" system. Even if, as presently constituted, the plan were a true neighborhood plan, we would reject it because it fails to establish a unitary system. *Orange County* does not say that a "neighborhood" system of student assignment per se is a unitary system. To the contrary, *Orange County* carefully pointed out:

> Under the facts of this case, it happens that the school board's choice of a neighborhood assignment system is adequate to convert the Orange County school system from a dual to a unitary system. This decision does not preclude the employment of differing assignment methods in other school districts to bring about unitary systems. There are many variables in the student assignment approach necessary to bring about unitary school systems. The answer in each case turns, in the final analysis, as here, on all of the facts including those which are peculiar to the particular system.

*Id.* at p. 208, n. 7.

The School Board contends adamantly that a dual system is eliminated by its plan because the zone lines were drawn geographically without regard to the race of the students within those lines. While such a system of student assignment may be less offensive than one which intentionally segregates students, it does not necessarily follow that it creates a unitary system. The Supreme Court has made it clear that school boards cannot avoid their responsibility to create a unitary system simply by resorting to non-discriminatory, geographical zoning where such zoning would be ineffective:

"In view of the situation found in New Kent County, where there is no residential segregation, the elimination of the dual school system and the establishment of a 'unitary, non-racial system' could be readily achieved with a minimum of administrative difficulty by means of geographical zoning * * *. [However] a geographical formula is not universally appropriate * * *."

Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 442 n. 6, 88 S.Ct. 1689, 1696 n. 6, 20 L.Ed.2d 716 (quoting from Bowman v. County School Board, 4 Cir. 1967, 382 F.2d 326, concurring opinion).

■ In this case, whether the School Board's plan is called a "neighborhood" plan or a geographical zoning plan, it does not disestablish the dual system. The *Orange County* system encompassed both rural and urban areas, comprised a large land area, had a total of 98 schools, and had a racial ratio of students of approximately 82 per cent white—18 per cent black. The Monroe City system, on the other hand, encompasses an urban area only, comprises a relatively small land area, has a total of only 18 schools, and has a racial ratio of students of approximately 51 per cent white—49 per cent black. In view of these circumstances, we reject as facially invalid the School Board's plan, under which close to 85 per cent of the black elementary students would continue to attend four

traditionally black schools, two of which remain all-black (Lincoln and Clark) and two of which remain nearly all-black (Carver and Berg Jones). The two elementary schools which would remain all-black would alone house about 66 per cent of the approximately 3000 black elementary students. Furthermore, the plan provides for Carroll Jr. and Carroll Sr. High Schools (traditionally black) to house approximately 77 per cent of the black secondary students in the system, while a student ratio of about 10 black to 1 white is maintained in those schools.

Having rejected the School Board plan we are now faced with the problem of what to do to achieve a unitary system in Monroe City. Because the tenor of Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (and now of Carter v. West Feliciana Parish School Board, 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L. Ed.2d 477) is to shift the burden from the standpoint of time for converting to unitary school systems from a status of litigation to one of unitary operation pending litigation, we have, in the past, ordered immediate implementation of the HEW plan despite defects it might have where it was the only plan in the record which currently gave any promise of ending the dual system. *See e. g.*, United States v. Board of Education of Baldwin County, 5 Cir. 1970, 423 F.2d 1013.

However, we do not wish to overturn lightly the District Court's finding of administrative, economic and educational unsoundness of the HEW plan and subsequent adoption of a compromise plan (Plan III). Moreover, we would not, at this late juncture of the school year, again order students shifted. *See* United States v. Board of Trustees of Crosby Independent School Dist., 5 Cir. 1970, 424 F.2d 625; Hall v. St. Helena Parish School Board, 5 Cir. 1970, 424 F.2d 320 Order of March 17, 1970]. It is our intention, though, to see to it that there is a unitary plan which will work in practicality in Monroe City by June 1, 1970.

There are two plans in the record, either of which may accomplish a unitary system. However, there is not enough information in the record upon which we can at the present time adopt either plan. The District Court found economic, administrative and educational unsoundness in the HEW plan but there is a dearth of evidence supporting this conclusion. There is no evidence pointing to the cost of the HEW plan to the school system in comparison with the cost of the other plans in the record. There was testimony that "pairing" of schools would result in restructuring of the grade system, but this fact standing alone is not an indicium of unsoundness and there is no evidence that the existing school facilities are inadequate to handle the new grade levels. *See* Taylor v. Ouachita Parish School Board, 5 Cir. 1970, 424 F.2d 324. Nor can the fact that the HEW plan involves some bussing defeat it until the extent of bussing and the cost of any increase are known. Where there are existing transportation facilities they must be reconstituted to achieve a unitary system. United States v. Board of Trustees of Crosby Independent School District, 5 Cir. 1970, 424 F.2d 625; *see* Singleton v. Jackson Municipal Separate School Dist., 5 Cir. 1969, 419 F.2d 1211, 1217 n. 1. Such reconstitution of transportation facilities does not violate the Civil Rights Act of 1964. United States v. Crosby Indep. School Dist., *supra.* The only feature of the HEW plan which might be said to be unsound from the evidence in the record now before us is the closing of Carroll High School, an apparently adequate facility worth about $2,000,000.00.

Plan III originally adopted by the District Court seems for the most part to accomplish a unitary system. However, on their face, the situations at Lincoln Elementary (which remains totally black under the plan), Lexington Elementary (which remains nearly all-white), and Carroll High (which was to be converted to a junior high with the seventh and eighth grades remaining all-black) belie a racially unitary system. Again, the record is bare of any evidence justifying these situations. There is nothing more in the record than the District Court's bare conclusion that this plan accomplishes a racially unitary school system.

Accordingly, it is ordered that:

1. The February 24 order of the District Court adopting the School Board's plan of student assignment is vacated.

2. The case is remanded to the District Court for further findings of fact, preceded by the taking of further evidence if necessary, which will show:

A. precisely how and why the HEW plan is administratively, educationally and economically unsound and

B. what justifications, if any, there are for the remaining apparent vestiges of a dual system at Lincoln and Lexington Elementary Schools and at Carroll High.

3. The court will confer with the parties and with the HEW representative in an attempt to resolve the problems which remain in the HEW plan and/or the plan originally adopted by the District Court.

4. If the Court cannot justify the disparities in the elementary schools and junior high school named in paragraph 2–B above, but can support its finding that the HEW plan is unsound, then it shall devise another compromise plan. [This is not meant to preclude a compromise, if one can be reached, before such findings are made.]

5. This court will retain jurisdiction of the appeal pending the limited remand to the District Court.

6. Plaintiffs-appellants' motion for summary disposition is held in abeyance pending remand.

7. The District Court will conduct such hearings and make such findings as are necessary and file the resulting findings or opinion and findings with this court within twenty days from the date of this order.

Vacated and remanded with directions.