**Andrew L. MANNINGS, a minor, by his father and next friend, Willie Mannings, et al., Plaintiffs-Appellants,**

v.

**The BOARD OF PUBLIC INSTRUCTION OF HILLSBOROUGH COUNTY, FLORIDA, et al., Defendants-Appellees.**

**No. 28643.**

United States Court of Appeals, Fifth Circuit.

May 11, 1970.

On Rehearing June 2, 1970.

---

James B. Sanderlin, St. Petersburg, Fla., Jack Greenberg, William L. Robinson, New York City, for appellants.

John M. Allison, Tampa, Fla., for appellees.

Claude R. Kirk, Jr., Gerald Mager, Legal Counsel to the Governor, Tallahassee, Fla., William C. Cramer, U. S. Representative, Congress of United States, Washington, D. C., amici curiae.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

█ This school desegregation case which began in 1958 presents the issue whether the Hillsborough County School system is now unitary within the meaning of the Supreme Court decisions in Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19; Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, and the decision of this court in Singleton v. Jackson Municipal Separate School District, 5 Cir., 1969, 419 F.2d 1211.[1] The principal assertion of error relates to the assignment of students.

However, in keeping with our more recent approach, we have obtained supplemental findings of fact from the district court so as to finally adjudicate the status of this system from the standpoint of all of the essentials required to convert a dual school system into a unitary system. Ellis v. The Board of Public Instruction of Orange County, Florida, 5 Cir., 1970, 423 F.2d 203.

In Singleton v. Jackson, supra, we set out certain definitive standards which were to be met in converting dual systems into unitary systems. In Ellis v. Orange County, supra, we adverted to Green v. New Kent County, and Alexander v. Holmes County, in the following language:

" * * * In Green v. County School Board of New Kent County, * * * the mechanics of what must be done to bring about a unitary system were outlined. They were stated in terms of eliminating the racial identification of the schools in a dual system in six particulars: composition of student bodies, faculty, staff, transportation, extracurricular activities, and facilities. * * * It was such dual systems, organized and operated by the states acting through local school boards and school officials, which were held unconstitutional in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I), and which were ordered abolished in Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).

"In *Green* the court spoke in terms of the whole system—of converting to a unitary, nonracial school system from a dual system. Then, in Alexander v. Holmes County Board of Edu-

---

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, supra, which this court has carried out in United States v. Hinds County School Board, 5 Cir., 1969, 417 F.2d 852 this court has judicially determined that the ordinary procedures for appellate review in school segregation cases have to be suitably adapted to assure that each system, whose case is before us, "begin immediately to operate as unitary school systems." Upon consideration of the record, the court has proceeded to dispose of this case as an extraordinary matter. Rule 2, FRAP.

cation, * * * the court pointed to the end to be achieved. The result, if a constitutionally acceptable system may be said to exist, must be that the school system no longer operates as a dual system based on race or color but as a 'unitary school * * * [system] within which no person is to be effectively excluded from any school because of race or color.' * * * "
423 F.2d 203 at p. 204.

We proceed to a determination of the status with respect to each of the six essential elements which go to disestablish a dual school system. Tested in this frame of reference, we find the Hillsborough system deficient in student assignment to certain schools, and to a degree in faculty and staff assignment throughout the system.

As of October 24, 1969, the Hillsborough County school system consisted of 124 schools: 87 elementary, 23 junior high, and 14 senior high. The total system wide student enrollment was 103,142. There were 19,668 Negro students in the system, or 19 per cent of the total. This percentage of Negro students varied from 21 per cent in elementary schools to 20 per cent in junior high schools to 14 per cent in high schools.

Sixty per cent of the Negro students were attending schools having all or virtually all Negro student bodies. These Negro students are housed in 14 elementary schools, 3 junior high schools and 2 senior high schools.

## FACULTY AND STAFF

■ The faculty and staff desegregation standard enunciated in Singleton v. Jackson, supra, requires assignment on a basis whereunder the ratio of Negro to white teachers and staff members in each school is substantially the same as each such ratio is to teachers and staff in the entire school system.

■ The Hillsborough County school system does not now meet this standard but has moved in large measure in that direction. The faculty ratio of the system is 82 per cent white and 18 per cent

Negro. The present faculty ratio in schools having white student bodies is 90 per cent white and 10 per cent Negro. The faculty ratio in schools having Negro student bodies is presently 50 per cent white—50 per cent Negro. The plan of the system is to go to the Singleton racial ratio in each school beginning with the next school term. The district court is directed to require that this be accomplished not later than June 6, 1970.

## TRANSPORTATION, FACILITIES AND EXTRACURRICULAR ACTIVITIES

The general Florida law requires transportation if the student resides more than two miles from the school to which he is assigned. FSA § 234.01. By special act of the Florida Legislature, the schools in Hillsborough County are exempted from this requirement if public transportation is available. Fla.Spec. Acts, 1963, Chap. 63–1410. The result is that there is no school bus transportation within the city limits of Tampa where the majority of the students reside. There is bus transportation in the other parts of the system. The record discloses that 23,500 students are being transported by the school system.

Transportation, facilities, and extracurricular activities were desegregated by a district court order of May 15, 1967. The district court is directed to supplement the 1967 order to include the requirements of Singleton in areas of transportation, school construction and school site selection.

## STUDENT ASSIGNMENT

The students are now assigned in the school system on a zone basis. The zones are drawn on a discretionary basis as distinguished from a strict neighborhood assignment such as was required in Ellis v. Orange County. We required the district court here to file supplemental findings reflecting the result of a strict neighborhood type assignment system as in Ellis v. Orange County. These findings demonstrate that

with the exception of the two all Negro high schools, there would be no substantial change in the racial composition of the schools in Hillsborough County under an Orange County type assignment system. For the reasons which follow, we conclude that the present assignment system is unacceptable as to certain schools.

### High Schools

There are two all Negro high schools located near the center of Tampa. Blake High School presently has an all Negro student population of 887. Under a strict neighborhood assignment system, 197 white students would be assigned to this school. Middleton High School presently has 1,010 Negro students and 6 white students. Under such a neighborhood assignment system, 250 whites would be included in this school. A strict neighborhood assignment system would thus desegregate the remaining all Negro high schools in the system and the district court must require the neighborhood assignment system defined in Ellis v. Orange County, supra, as to the high schools in the system.

As an alternative, the district court, in its discretion and in the event the school board so requests, may permit the pairing on a neighborhood school concept of Blake and Middleton with two white schools which presently have substantially all white student bodies: Hillsborough and Plant. Middleton may be paired with Hillsborough and Plant may be paired with Blake. Middleton and Blake have small student capacities as compared to Hillsborough and Plant but one grade can be accommodated in the smaller schools and two grades in the larger schools.

These schools, as paired, may be considered as one school or attendance center for the purposes of a neighborhood type school assignment system (here accomplished by discretionary zone lines). They are, in fact, adjacent and in such close proximity to each other, as to fit well within any reasonable concept of neighborhood school assignment. The school board is not unfamiliar with the pairing practice since two schools in Plant City, under the present plan, have been paired: Tomlin and Marshall.[2]

### Junior High Schools

There are three junior high schools with virtually all Negro student bodies: Just, Booker T. Washington, and Young. These three schools can be paired on a neighborhood basis to the end that they will be desegregated. They are located in close proximity to junior high schools having substantially all white student bodies. - It appears that Just can be paired with Wilson or West Tampa; Booker T. Washington with Franklin or Memorial; and Young with Sligh, Memorial or Franklin. Pairing must be required but the choices, in the first instance, should be for the school board.

### Elementary Schools

There are 14 elementary schools with virtually all Negro student bodies. Several of these can be paired to accomplish desegregation. For example, without departing from neighborhood school concepts, the following schools could be paired: College Hill with Edison; Dunbar with Tampa Bay; Henderson with Graham; Lincoln with Jackson; Meacham with Gorrie; and Simmons with Burney or Wilson.

It is conceivable that substantially the same result could be achieved in some of the elementary schools by redrawing zone lines instead of pairing. The district court is authorized to consider and permit rezoning as an alternative to pairing where the result would be substantially desegregated student bodies. It may be that the school board

2. This type of assignment, denominated as pairing, is singularly distinguishable from the grouping of several schools, located in other than a neighborhood area, into one group for assignment purposes in order to manipulate racial balances through inordinate transportation requirements.

would prefer pairing in some instances and rezoning in others and such a course would be proper on the indicated basis.

In either event, this would leave 4,197 Negro elementary students in 8 schools with all Negro student bodies. And, as appears from the discussion of high and junior high schools, every elementary student in the system including those left in these 8 schools will attend desegregated junior high and high schools (grades 7–12).

In summary, under the present student assignment system, 60 per cent of the Negro students attend schools having all or virtually all Negro student bodies. Under a strict neighborhood assignment system this percentage would be reduced to 51 per cent. On the assignment basis herein described and which is directed, the number of Negro students attending all or virtually all Negro schools will be reduced to 21 per cent.

The all Negro student body schools which will be left are the result of neighborhood patterns just as is the case with the numerous all white student body schools. There is presently in existence a majority to minority transfer provision in this school system. The district court should direct that this provision be maintained. There is also a bi-racial committee which serves in an advisory capacity to the school board. The district court is directed to require the implementation of the function of the bi-racial committee as it relates to the majority to minority transfer provision and to school site locations. As we said in Ellis v. Orange County, supra, with respect to eliminating all Negro student body schools:

> " * * * The majority to minority transfer provision under the leadership of the bi-racial committee is a tool to alleviate these conditions now. Site location, also under the guidance of the bi-racial committee, will guarantee elimination in the future. In addition, open housing, Title VIII, Civil Rights Act of 1968, 42 USCA, § 3601, et seq., Jones v. Alfred H. Mayer

Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, will serve to prevent neighborhood entrapment."

## DEFICIENCIES TO BE REMEDIED

■ We conclude that 3 of the 6 elements which go to make up a unitary school system have been accomplished in Hillsborough County: transportation, extracurricular activities, and facilities. The deficiencies in Faculty and staff desegregation and in student assignment must be remedied not later than June 6, 1970 on the basis heretofore stated.

■ Once done, and when the district court, by the standards herein stated, has made its own conclusion as to the system being unitary, the district court must retain jurisdiction for a reasonable time to insure that the system is operated in a constitutional manner. As the Supreme Court said in Green, " * * * whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that the state-imposed segregation has been completely removed." 391 U.S. at 439, 88 S.Ct. at 1695.

Reversed and remanded with direction.

## ON PETITION FOR REHEARING

PER CURIAM:

The petition of appellees for rehearing is granted. The opinion of the court is modified in two respects.

One, the request of appellees to realign the attendance zones for Just, Booker T. Washington and Young junior high schools as an alternative to pairing Just with Wilson or West Tampa, Booker T. Washington with Franklin, and Young with Sligh, Memorial or Franklin is granted. This modification is granted on the representation by appellees that the stated zone line changes will result in a student population at Just of 567 Negro and 107 white students; 625 Negro and 115 white students in Booker T. Washington; and 1,075 Negro and 159 white students in Young.

Two, the reference in the opinion to the transportation of students in the Hillsborough system is in error to the extent of the reference to the Florida Special Act. Fla.Spec. Acts, 1963, Chap. 63–1410. It now appears that the special act authorizes transportation under certain circumstances even where the student resides less than two miles from the school to which he or she is assigned.