429 F.2d 414
 Caroline HARVEST et al., Plaintiffs-Appellees,
v.
BOARD OF PUBLIC INSTRUCTION MANATEE COUNTY, FLORIDA, et al.,
Defendants-Appellants-Cross Appellees, v. Jerome
PRATT et al.,
Intervenors-Appellees-CrossAppellants.
 No. 29425.
 United States Court of Appeals, Fifth Circuit.
 June 26, 1970.
 
 David K. Deitrich, Robert L. Scott, Bradenton, Fla., for School Board.
 Gerald Mager, Legal Counsel to the Governor, Tallahassee, Fla., for Claude R. Kirk, Jr., amicus curiae.
 Jerome Pratt, pro se, and Earl M. Johnson, Jacksonville, Fla., for intervenors Pratt and others.
 Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Drew S. Days, III, New York City, for plaintiffs-appellees.
 Before JOHN R. BROWN, Chief Judge, and MORGAN and CLARK, Circuit judges.
 PER CURIAM:
 
 
 1
 The issue on this appeal is not whether the district court selected the best possible plan for unitizing the Manatee County School System but rather whether that court abused its discretion by adopting an unworkable plan or one based on an incorrect legal standard. See Carter v. West Feliciana Parish School Board, 396 U.S. 290, 292, 90 S.Ct. 608, 24 L.Ed.2d 477, 479 (1970) (concurring opinion of Mr. Justice Harlan). Expressed in other terms the appellate question is: Did the district court invoke a remedy so extreme as to constitute an abuse of its discretion? However put, the answer clearly is: No.
 
 
 2
 The judgment of the district court is affirmed without prejudice to further consideration by the district court of the present student assignment plan in light of the experience gained since its implementation.
 
 CLARK, Circuit Judge (concurring):
 
 3
 I concur in the affirmance and remand of this cause but deem it necessary to briefly explain why.
 
 
 4
 I would expressly note that, in affirming, the trial court retained jurisdiction of this cause 'for such further proceedings and orders as may be necessary in this cause'. Since this cause involves injunctive relief, it is always subject to change, as that court's order so adjudicated. Modifications of or changes to the present injunctive mandate are most appropriately the business of that court in the first instance. The advent of the summer recess permits a time for consideration and study of any other feasible alternatives among old proposals or new suggestions which may now be advanced by the plaintiffs, HEW, the local school board or the State Board of Education.
 
 
 5
 All parties and persons interested and affected have now had a period of actual operating experience under the plan previously implemented. With recess time now available to study alternatives, this past experience plus any new ideas advanced, now may be considered. These could amend or entirely displace the present plan, which in some instances requires bussing of children of both races across several school districts predominantly attended by members of the opposite race. Possibly pupil travel time could be reduced or eliminated and scarce dollars now spent for transportation could then be put to more educationally advantageous purposes under such an amended or modified concept.
 
 
 6
 There is yet another reason why I feel that this case should be expediently returned to the court below for further review. In this area of the law, different acceptable methods and procedures for achieving racially unitary school systems are constantly evolving. Such new developments which have recently occurred (and others yet unknown which could occur before this matter is redetermined by the district court) may be considered appropriate for application here. For example, Manatee County Schools appear to be closely similarly circumstanced, except for size, to the Charlotte-Mecklenburg district recently dealt with by the Fourth Circuit in its en banc opinion, Swann v. Charlotte-Mecklenburg Board of Education, 431 F.2d 138 (4th Cir. 1970). The court there emphasized what the district court here has consistently recognized-- that racial balancing is not the sine qua non of a unitary system-- that educational reasonableness and realities must prevail over any artificial racial ratios. It could also be that the district court would want to approve several constitutionally acceptable plans as alternatives and leave the choices among them to the Manatee County School Board, as was suggested in a portion of this circuit's decision in Mannings v. Board of Public Instruction of Hillsborough County, Florida, 427 F.2d 874 (5th Cir. 1970).
 
 
 7
 Whether any of these suggestions are practicable or possible and how any one or more of them may be effectuated should now rest with the district court, which, without a doubt, will use its very best lights to resolve these volatile and difficult issues in the best interests of all litigants and the multiplied thousands of others equally affected.
 
 
 8
 Although I previously differed with our refusal to stay the time of implementation of the pupil placement feature of the plan then adopted vis-a-vis the end of the 1969-70 school term in Manatee County, I clearly recognized that the problems which I feared would develop had been the result of two factors: (1) a generously permissive order by the District Judge as to when pupil transfers were to take place, and (2) an inordinate delay in effecting such transfers by school officials. It was the latter not the former that truly created the real emergency for sound educational values due the children of all races in this district. No one showed this court that the time of implementation of pupil replacement had been planned or prepared for, nor was it coordinated with any particular educational interlude or period. It appeared to me that it had simply been postponed until it could no longer exist-- until the last possible moment when the very end of the school year was imminent. The proof made was to the effect that the whole of the school year would be put in jeopardy. Because the emergency was district-created not court-created, seemed then and seems now unimportant because the welfare of the children has to be the paramount consideration.
 
 
 9
 Because some chose to interpret my dissent differently, I feel constrained to take this opportunity to make it crystal clear that I never entertained the slightest feeling that the District Judge had not, could not and would not put forth his best and most sincere efforts to maximize educational considerations while meeting the inexorable demands of the law requiring that this school system be restructured so as to abolish its former racial duality.