430 F.2d 309
 Eugene C. TILLMAN, Jr., a minor, etc., et al., Plaintiffs-Appellees,
v.
The BOARD OF PUBLIC INSTRUCTION OF VOLUSIA COUNTY, FLORIDA, et al., Defendants-Appellants,
The Honorable Claude R. Kirk, Jr., as Governor of the State of Florida, the State Board of Education of the State of Florida, and the Honorable William C. Cramer, a Member of Congress of the United States, Intervenors-Appellants.
 No. 29180.
 United States Court of Appeals, Fifth Circuit.
 July 21, 1970.
 
 Claude R. Kirk, Jr., Governor, Gerald Mager, Office of the Governor, Tallahassee, Fla., for intervenors-appellants.
 William C. Cramer, Bill Chappell, Washington, D. C., amicus curiae.
 Norman J. Chackin, Jack Greenberg, William Robinson, Drew Days, III, New York City, Earl M. Johnson, Jacksonville, Fla., Frank B. McGettrick, Acting Dir., Dept. of H. E. & W., Washington, D. C., for plaintiffs-appellees.
 Rivers Buford, Jr., Gen. Counsel, State Bd. of Education, Tallahassee, Fla., for State Board of Education of Florida.
 John B. Mattingly, De Land, Fla., Chester Bedell, Jacksonville, Fla., for Board of Public Instruction of Volusia County.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This school desegregation case began on June 3, 1960, over ten years ago.[1] In that space of time numerous hearings have been held concerning school integration in Volusia County, Florida. For the purpose of this appeal we start with the order of the District Court of August 19, 1969, in which it was requested that the Department of Health, Education and Welfare (HEW) study the Volusia County School situation and submit a proposed plan to bring about a unitary school system. Such a plan was submitted to the District Court and the parties by HEW on December 1, 1969.
 
 
 2
 On December 18, 1969, the Volusia Board submitted a plan designated "B-1" which modified an earlier proposal, designated as "B", submitted by the Volusia Board to the District Court on August 19, 1969, in order to include some of the recommendations made by HEW.
 
 
 3
 On January 26, 1970, the Board filed another plan designated "B-2," a modification of the original plan "B" as a part of a "Petition for Clarification", in which the Board requested the Court to "advise the Defendant if Plan B as amended on January 23, 1970 [B-2] will create a unitary school system as defined by the court, or whether Plan B as amended on December 18, 1969 [B-1] will provide the unitary school system for Volusia County, Florida, or whether some other plan must be adopted in order to achieve this end." The District Court approved and ordered implemented plan "B-1" as one which would achieve desegregation and establish a unitary system in Volusia County. From that order this appeal ensued.
 
 
 4
 In keeping with our more recent approach, we have obtained from the District Court a supplemental record and findings of fact so that we might clearly analyze and understand the posture of the case before the District Court, how it dealt with the problems presented to it, and whether the relief which it granted was appropriate, so that we might fully adjudicate the status of the school system from the standpoint of all of the essentials required to convert a dual system into a unitary system. Mannings, et al. v. Board of Public Instruction of Hillsborough County, Florida, 5 Cir. 1970, 427 F.2d 874 [No. 28643]; Ellis v. Board of Public Instruction of Orange County, Florida, 5 Cir. 1970, 423 F.2d 203.
 
 
 5
 We approve and adopt the findings of fact of the District Court which are attached as an appendix. We agree that Plans B and B-2 would have per-petuated the dual school system in the Halifax and De Land schools in question in Volusia County, Florida, contrary to Carter v. West Feliciana Parish School Board, 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477; Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19; Green v. County School Bd. of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; United States v. Hinds County School Board, 5 Cir. 1969, 423 F.2d 1264.
 
 
 6
 We add two further comments. As fully explicated in the findings of fact, in which we concur, there was no lack of due process, as contended by appellants, in the proceedings in the District Court.
 
 
 7
 We are also convinced that there was no abuse of discretion, no mistake of law, and abundant evidentiary support to sustain the District Court in requiring a moderate increase in transportation to eliminate all vestiges of the long standing dual system in all the affected schools. "When there are existing transportation facilities they must be reconstituted to achieve a unitary system. United States v. Board of Trustees of Crosby Independent School District, 5 Cir. 1970, 424 F.2d 625; see Singleton v. Jackson Municipal Separate School Dist., 5 Cir. 1969, 419 F.2d 1211, 1217 n. 1. Such reconstitution of transportation facilities does not violate the Civil Rights Act of 1964." Andrews v. City of Monroe, 5 Cir. 1970, 425 F.2d 1017.
 
 
 8
 Volusia County now has a unitary school system. This does not foreclose the Board from adopting other techniques of desegregation such as pairing as a viable alternative to some transportation now required, provided, of course, that the operation of the system continues in a constitutional manner. SeeMannings, supra.
 
 
 9
 Affirmed.
 
 APPENDIX
 FINDINGS OF FACT
 
 10
 The United States Court of Appeals for the Fifth Circuit, by order entered April 30, 1970, remanded this action and directed this Court to supplement the record and to make findings of fact as to certain matters described in that order. In order to enable the Court to comply with the order of remand, an evidentiary hearing was held on May 13, 1970. Counsel for plaintiffs-appellees, for the Volusia County Board of Public Instruction and its Superintendent, defendants-appellants, for the Florida State Board of Education, intervenor-appellant, and for Governor Claude R. Kirk, Jr., intervenor-appellant, attended and participated in the hearing.
 
 
 11
 Evidence was taken without objection in the form of factual representations by counsel for the Volusia Board and its Superintendent, supplemented and elaborated upon by Raymond G. Dunne, the Volusia Superintendent, in response to direct questions by the Court and by counsel for the plaintiffs and defendants. Eleven exhibits were submitted by the Volusia Board and its Superintendent and were received into evidence without objection. The exhibits will be transmitted with these findings to the Court of Appeals.
 
 
 12
 Counsel for all parties agreed that there is no question before this Court in respect to assignment of faculty and staff, extracurricular activities, the transportation system, planning for future school construction and the assignment of pupils to senior high schools, junior high schools, seventh grade centers, and elementary schools located elsewhere than in the Halifax and DeLand areas. (This Court, however, has some reservations, in light of the explicit language of Singleton, about the impossibility of complete teacher transfers in twelve elementary schools shown in Table 1, Notice of Compliance, filed February 9, 1970. Singleton v. Jackson Municipal Sep. Sch. Dist., 419 F.2d 1211 (5th Cir. 1969) (en banc).
 
 
 13
 The only matter in controversy and the subject of these findings is pupil assignment to the elementary schools of Volusia County in two specific areas: the Halifax area, consisting of fifteen schools in Port Orange, South Daytona, Daytona Beach, Holly Hill and Ormond Beach, and immediately adjacent areas on the Atlantic shore of Volusia County, and the five schools in the DeLand area, which is located near the western county line, some twenty-two miles distant from the Halifax area.
 
 
 14
 The remand order of the Court of Appeals requires (1) a detailed description of the transportation system operated by the Volusia Board before and after February 1, 1970, including certain specific findings, (2) a finding of whether the Volusia Board's preferred plan B as implemented before February 1, 1970, embodied variances from "the neighborhood school concept," and (3) a particular delineation of any impermissible deviations from a unitary system found in plan B as the Volusia Board proposed to modify it by plan B-2, effective February 1, 1970. A proper response by this Court to the order of remand first requires a factual description of the concept and application of plans B and B-2 to elementary schools, as compared to plan B-1, and a description of the role of pupil transportation in each.
 
 
 15
 The elementary school system in the Halifax and DeLand areas was not, under the School Board's plan B, and would not be, under the School Board's B-2 modifications of plan B, a "neighborhood school" system in the sense dealt with by the Court of Appeals in Ellis v. Board of Public Instruction of Orange County, Florida, 423 F.2d 203 (5th Cir., Feb. 17, 1970). Nor were those plans intended by the School Board to reflect a strict "neighborhood school concept." Such a concept, the Volusia Board found, would be ineffective in the Halifax and DeLand areas to attain a unitary system because it would resegregate a number of formerly all-white elementary schools, desegregated under plan B in September 1969, in white residential areas on the Halifax peninsula and on the perimeters of both the Halifax and DeLand areas. Defendants-appellants' exhibits G and J, which depict by a gray shaded area the concentration of the Negro elementary school population in the core areas of both the Halifax and DeLand areas, show graphically why a pure "neighborhood school concept" would have these results.
 
 
 16
 Defendants assert that the Volusia Board's plan B, adopted August 19, 1969, and plan B-2, adopted January 26, 1970, reflect three principal objects: (1) the filling of existing elementary school facilities, insofar as possible, by walk-in pupils in the immediate area and by pupils transported from contiguous geographic areas; (2) the maximum use of existing elementary school facilities; and (3) the racial integration of the elementary schools. Both Board plans, however, utilize students transported from non-contiguous geographic areas.
 
 
 17
 The approximate location of the elementary schools in the Halifax area[1] is shown by defendant-appellants' exhibits G and I. The schools indicated by numbers on those maps are identified in exhibit H.
 
 
 18
 The Volusia Board's plan B as implemented in September 1969, and as it was proposed for continuation under plan B-2, drew a walk-in attendance zone around Bonner and another around Small to include the adjacent areas from which, it was projected, those schools would be filled to capacity. A substantial number of pupils in the core area were thereby excluded from Bonner and Small because of their place of residence. They were not drawn into the attendance zones of the outlying schools nearest to them, which were at capacity and were attended by students of both races from their own attendance zones. Rather, those pupils from the core area were zoned into six transportation islands, from which they were transported to Hurst (No. 6 on exhibits G and I), Longstreet (No. 11), Lenox (No. 12), Riverview (No. 13), Ortona (No. 14), and Osceola (No. 15). All but the Hurst school would otherwise have been attended only by white pupils. Nearly all of the pupils so transported under the Board's plan B were of the Negro race, although 18 white children resided in the Hurst island, as did 99 Negro children.
 
 
 19
 Similar results were accomplished by plan B and proposed for continuation under plan B-2 in the DeLand area (exhibit J), where the walk-in zone drawn around Starke school (No. 4) led to the creation of a transportation island for George Marks school (No. 3), which was able to accommodate additional pupils. The Marks transportation island embraced a neighborhood in which Negro residents were dominant (shown on exhibit J as a shaded area) and other neighborhoods which were racially mixed, with a slight preponderance of whites (shown on exhibit J by closely drawn horizontal lines). Both white and Negro elementary school children were therefore transported to George Marks school from the Marks island.
 
 
 20
 Under a "freedom of choice" plan used in the Volusia system until June, 1969, 99 percent of all white students were in "white schools" and 60 percent of all Negro students were in "black schools." The implementation of plan B resulted in 73.3 percent of all Negro pupils and 93.3 percent of all white pupils for all grades in all areas of the county attending integrated schools. Bonner and Small in the Halifax area and Starke in the DeLand area remained as all-black schools. Tomoka (No. 5) and Port Orange (No. 17) in the Halifax area, located far from any appreciable number of Negro families, remained virtually all white.
 
 
 21
 For those schools specifically under consideration here, namely the fifteen elementary schools in the Halifax area and the five elementary schools in the DeLand area affected by the B-1 plan, the statistics of integration are markedly different. (See tables A and B below.) In the Halifax area, under the School Board's plan B, 53.9 percent of the Negro elementary children attended completely segregated and traditionally all-Negro schools (Bonner and Small). The degree of segregation in the DeLand area elementary schools was even more complete. There, under the School Board's plan B, 74.9 percent of the Negro elementary children attended the completely segregated and traditionally all-Negro school (Starke). In the Halifax area, under plan B, all of the white elementary school children attended schools integrated to some extent (although six of the fifteen had fewer than 10 percent Negroes in their student bodies, and one of the six, Tomoka, had only one Negro pupil out of 497 in the school). In the DeLand area, under plan B, all of the white elementary school children attended integrated schools (although two of the five had fewer than 10 percent Negroes in their student bodies).
 
 
 22
 The Volusia Board's resolution adopted January 23, 1970, which is referred to in these proceedings as its plan B-2, did not alter the operation of plan B except (a) to grant the pupil an unrestricted right to transfer from a school where his race is in the majority to the nearest school where his race is in the minority and where he could physically be accommodated, with free transportation provided by the county, (b) to desegregate faculty and staff at all schools effective February 1, 1970, rather than in September, 1970, as contemplated by Volusia's plan B, and (c) to restrict out-of-zone transfers of pupils, theretofore granted for such reasons as the convenience of working mothers, to cases involving a demonstrable physical or psychological infirmity.
 
 
 23
 The principal feature of plan B-1, as compared to plans B and B-2, is that the Bonner, Small, and Starke walk-in zones are restricted, and the additional Negro pupils thereby displaced are transported to the perimeter schools. White pupils are transported from outlying areas to the Bonner, Small and Starke schools. The pupils residing in the Hurst and Marks transportation islands under plans B and B-2 are still transported to Hurst and George Marks, respectively, from the expanded transportation zones created by plan B-1. The implementation of that plan under Judge Scott's order of February 1, 1970, resulted in the meaningful integration of all schools in the Halifax and DeLand areas. The racial composition of each school under plan B-1 is predominantly white.
 
 
 24
 Under plan B-1, adopted by Judge Scott's order of January 26, 1970, all of the Negro students and all of the white students attend substantially integrated schools. In fact, only one school of the fifteen in Halifax and no school in DeLand has fewer than 20 percent or more than 40 percent Negro pupils in attendance. That one school, Osceola, is at the northern extremity of the area under consideration and across the Halifax River from the mainland (where the Negro population is located).
 
 
 25
 A table comparing the enrollments in Halifax area elementary schools under plans B and B-1 follows:
 
 
 26
 Table A
 (Source: Notice of Compliance, etc., Appendix A,
 Table 3, filed Feb. 9, 1970, Document #51 on Appeal)

 Plan B - September 29, 1969 Plan B-1 - February 6, 1970
 White Negro Total % Negro White Negro Total % Negro

 1.* So. Ridgewood 172 85 257 33.1 180 90 270 33.3
 2. No. Ridgewood 181 92 273 33.7 164 92 256 35.9
 3. Holly Hill 819 36 855 4.2 770 193 963 20.0
 5. Tomoka 496 1 497 0.2 504 129 633 20.4
 6. Hurst 942 74 1016 7.3 801 300 1101 27.2
 7. Westside 822 144 966 14.9 637 192 829 23.2
 8. Highlands 481 279 760 36.7 457 242 699 34.6
 9. Bonner 0 556 556 100.0 469 283 752 37.6
10. Small 0 762 762 100.0 463 197 660 29.8
11. Longstreet 448 105 553 19.0 485 126 611 20.6
12. Lenox 310 34 344 9.9 258 116 374 31.0
13. Riverview 93 60 153 39.2 95 56 151 37.1
14. Ortona 350 101 451 22.4 359 116 475 24.4
15. Osceola 977 63 1040 6.1 922 88 1010 8.7
16. So. Daytona 941 51 992 5.1 516 224 740 30.3
 ____ ____ ____ ____ ____ ____ ____ ____
 Totals 7032 2443 9475 25.6 7080 2444 9524 25.6
 
 
 
 Notes:
 
 
 *
 Numbers correspond to those on exhibits G and I. Schools #4 (Ormond Beach, formerly called Corbin Avenue) and #17 (Port Orange) were unaffected by plan B-1
 
 
 
 27
 From Table A it is apparent that under plan B, 1318 Negroes attended totally segregated Bonner and Small elementary schools out of 2443 elementary Negro students in the Halifax area elementary schools, for a ratio of 53.9 percent Negroes in segregated schools. Also, it is evident that Holly Hill, Tomoka, Hurst, Lenox Avenue, Osceola and South Daytona all had fewer than 10 percent Negro students under plan B. This segregation of Negroes and white students was eliminated under the B-1 plan in February, 1970.
 
 
 28
 A table comparing the enrollments in DeLand area elementary schools under plans B and B-1 follows:
 
 
 29
 Table B
 (Source: Notice of Compliance, etc., Appendix A,
 Table 3, filed Feb. 9, 1970, Document #51 on Appeal)

 Plan B - September 29, 1969 Plan B-1 - February 6, 1970
 White Negro Total % Negro White Negro Total % Negro

1.* Boston Ave. 381 77 458 16.8 351 92 443 20.8
2. Brewster 360 33 393 8.4 319 114 433 26.3
3. Marks 792 19 811 2.3 544 221 765 28.9
4. Starke 0 526 526 100.0 380 192 572 33.6
5. Woodward 359 47 406 11.6 290 139 429 32.4
 ____ ____ ____ ____ ____ ____ ____ ____
 Totals 1892 702 2594 27.0 1884 758 2642 28.7
 
 
 
 Notes:
 
 
 *
 Numbers correspond to those on Exhibits J and K, as corrected
 
 
 
 30
 From Table B it appears that under plan B, 526 out of the 702 Negroes in the DeLand area schools attended all Negro Starke Elementary, for a ratio of 74.9 percent Negroes in a totally segregated educational situation. Little racial interpenetration of the student population occurred in DeLand under plan B which defendants seek to reinstate. Plan B-1 eliminated the former racial segregation.
 
 
 31
 Proceeding now to the specific inquiries made by the remand order of the Court of Appeals, the Court further finds:
 
 
 32
 1. Both before and after February 1, 1970, 85 buses were used by the Volusia Board in the operation of the entire system for all grades. Before that date 67 buses were used on actual transportation routes and the balance were rotated through maintenance, kept as spares, and devoted to athletic activities, field trips and other specific activities. After that date, an additional 8 buses for a total of 75 were required on routes, and the number free for maintenance, standby and other purposes was correspondingly reduced.
 
 
 33
 2. The names of all elementary schools in the system to which students are or were bused, the number and racial composition of the transported students and the longest bus route of each school are shown in Schedules 1-A and 1-B (exhibits A and B).
 
 
 34
 From these schedules, the following data related to those schools under consideration here can be summarized thus:
 
 
 35
 Table C
 Total Mileage Traveled One Way By
 Elementary Students to Schools in Halifax
 and DeLand Areas Affected by Implementation
 of Plan B-1 (From Schedule 1)
School[1] September 1969 February 1970
Halifax Area[2] No. Bus Total No. Bus Total
 Routes Mileage Routes Mileage

 1. So. Ridgewood 1 3 1 3
 3. Holly Hill 1 16 3 25
 5. Tomoka 3 21 5 36
 6. Hurst 1 4 4 16
 7. Westside 2 38 0 0
 9. Bonner 0 0 7 53
10. Small 0 0 5 35
11. Longstreet 3 20 3 20
12. Lenox 1 3 2 8
13. Riverview 1 6 1 6
14. Ortona 2 8 2 10
15. Osceola 5 32 5 33
16. South Daytona 2 8 4 19
 __ ___ __ ___
 22 159 miles 42 264 miles
DeLand Area[3]
2. Dempsie Brewster 1 4 0 0
3. George Marks 6 55 4 16
4. Starke 0 0 8 78
5. Woodward 3 22 2 16
 __ __ __ ___
 10 81 miles 14 110 miles
 
 
 
 Notes:
 
 
 [1]
 Numbers correspond to those on exhibits G, I, J, K, respectively. Schools #4 and #17 are unaffected by B-1
 
 
 [2]
 Highlands (8) and North Ridgewood (2) Schools have no transported students
 
 
 [3]
 Boston Avenue (1) has no transported students
 
 
 
 36
 In the Halifax area schools under consideration, there are 3287 pupils being transported under plan B-1 and 1945 pupils under plan B — an increase of 1342 in thirteen schools to achieve meaningful integration.
 
 
 37
 In the DeLand area schools there are 711 pupils transported under plan B-1 and 510 under plan B — an increase of 201 pupils in four schools.
 
 
 38
 3. No white elementary student was transported past a predominantly Negro elementary school under plan B, although the 18 white children and 99 Negro children in the Hurst island were transported from an area not far from Bonner, and that is still the case. Likewise, both white children and Negro children in the Marks island were transported from an area not far from Starke, and that too is continued in plan B-1. No white child is transported past a predominantly Negro school under B-1, as there are no such schools under plan B-1.
 
 
 39
 4. Before February 1, 1970, some Negro elementary pupils were transported past predominantly white elementary schools, but none were so transported to reach predominantly Negro elementary schools. In the Halifax area transportation islands, Negro pupils were transported past South Ridgewood (No. 1) and North Ridgewood (No. 2) to Longstreet, Lenox, Riverview, Ortona, and Osceola. In the DeLand area, some Negro pupils were transported past Dempsie Brewster and Boston Avenue elementary schools, predominantly white, to George Marks School. Thus, the Negro pupils so transported were transported past substantially integrated schools in order to place them in schools which would otherwise be attended only by white pupils. After February 1, 1970, under plan B-1, more than 700 Negro pupils were transported past predominantly white schools in order to reach other predominantly white schools (exhibits A and B).
 
 
 40
 5. The additional annual operating cost of the transportation system as a result of implementation of plan B-1 is $38,500. In order to restore transportation functions which were curtailed to meet the additional requirement for on-route buses under plan B-1, nine new buses, including one standby, are said to be required. Depending on bus capacity, defendants estimate that the acquisition cost will be $72,000 to $108,000. The calculations used to arrive at such sums appear in exhibit D. Defendants did not estimate what additional costs would have been incurred under plan B-2 to provide free transportation for majority to minority transfers.
 
 
 41
 6. The Volusia Board's plan B, in effect prior to February 1, 1970, varied from the neighborhood school concept as defined in Ellis v. Board of Public Instruction of Orange County, Florida, 423 F.2d 203 (5th Cir., Feb. 17, 1970), in that it created transportation islands in the core of the Halifax and DeLand areas for the purpose of accommodating in otherwise all-white schools the Negro pupils who could not be accommodated in their own neighborhoods.
 
 
 42
 7. By its request to "delineate with particularity any impermissible deviations from a unitary system that the Court found in the Board's amended Plan B-2 adopted [by the Board] January 23, 1970, but which were not set forth in any findings of fact," this Court assumes that both deviations from a unitary system and other factors, including the timing of the Board's actions and the limited availability of alternatives, causing the entry of the order are requested since no detailed order was entered by Judge Scott.
 
 
 43
 At the time of the entry of the January 27, 1970 order, Judge Scott had before him two alternatives: the B-1 plan, unanimously adopted by the Volusia Board on December 17, 1969, and the Board's B-2 modification, submitted to the Court on January 26, 1970, less than one week before the February 1, 1970 deadline established in Singleton, supra. The Volusia Board had not sought to take advantage of the latitude given them in the January 16, 1970 order, whereby Judge Scott stated that a showing of good cause would permit modification of the Florida School Desegregation Consulting Center proposal.
 
 
 44
 It is clear from the December 18, 1969 transcript (e. g., pp. 23-24) and the January 16 and 27 orders that Judge Scott felt inextricably bound to the February 1, 1970 deadline for implementation of some plan (to eliminate the dual system existing under plan B) in accordance with the language in Alexander v. Holmes County Bd. of Educ., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969) requiring "immediate" desegregation. For reasons stated below, plan B was clearly inadequate, plan B-2 was found to be substantially the same as plan B (except as to some indefinite and slight changes to be anticipated from changes in transfer policies and transportation) and Judge Scott was left with the sole alternative of plan B-1, which the School Board approved in December and had not sought to change.
 
 
 45
 Plan B was implicitly found to perpetuate a dual school system by Judge Scott's January 27, 1970 order, and we so find expressly now for the following reasons. Plan B relegated approximately 54 percent of the Negro elementary children in the Halifax schools to wholly segregated schools, and in DeLand approximately 75 percent of the Negro elementary children would remain in all Negro Starke Elementary. Moreover, plan B left three of the twenty schools in Halifax and DeLand all Negro and eight others more than 90 percent white when a moderate increase in transportation affecting seventeen schools could meaningfully eliminate all vestiges of the long-standing dual system in all the affected schools.
 
 
 46
 Other techniques of desegregation might have been used by the Board or the Florida School Desegregation Consulting Center to avoid the degree of transportation required under plan B-1, such as pairing, but those options were not available to Judge Scott at the time he entered his January 27, 1970 order. Pairing may not have been explored because of a belief that pairing would not have been as effective a remedy as the transportation approach, or because the Center began from the "island" transportation plan already adopted by the School Board and tried to work from that basis. In retrospect, the pairing approach may have presented difficulties in the Halifax area because of already existing capacity attendance at schools surrounding the area of Negro concentration, or because of a desire for educational (or other) reasons to retain a white majority in all affected schools. (A reference to pairing as a technique to be used is found in the record in Document 29 on appeal, pp. 97-100, where Superintendent Dunne stated that pairing in the Halifax area was not felt to be efficacious. (1) See also id. at 121-22.) In the DeLand area, however, pairing might present a viable alternative, since Marks Elementary School is but 1 5/8 miles from Starke Elementary — within the Florida two-mile limit for walk-in students. See Mannings v. Board of Public Instr. of Hillsborough Cty., No. 28643 (5th Cir., May 11, 1970), 427 F.2d 874(1) (permitting pairing or rezoning to accomplish a unitary system).
 
 
 47
 These findings of fact having been prepared according to the request of the Fifth Circuit Court of Appeals dated April 30, 1970, and within the time permitted by an oral extension of time, it is
 
 
 48
 Ordered that these findings, together with the record on appeal and exhibits taken at the May 13, 1970 hearing, be transmitted forthwith to that Court.
 
 
 49
 DONE AND ENTERED this 26th day of June, 1970.
 
 
 50
 /s/ WM. A. McRAE, JR.
 Judge
 
 
 
 Notes:
 
 
 [1]
 Under the stringent requirements of Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, which this court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 423 F.2d 1264 [Nos. 28030, 28042, Nov. 7, 1969], this court has judicially determined that the ordinary procedures for appellate review in school segregation cases have to be suitably adapted to assure that all systems, whose case are before us, "begin immediately to operate as unitary school systems." Upon consideration of the record, the court has proceeded to dispose of this case as an extraordinary matter. Rule 2, FRAP
 
 
 [1]
 In September 1969, the Campbell elementary school, which was located in the core area and which previously was attended solely by Negro elementary pupils, was closed and is not under consideration here. Campbell has been rated by the Florida State Board of Education as unsuitable for elementary education. Also in September 1969, Volusia Avenue elementary school, which previously served walk-in Negro elementary pupils exclusively, was converted by the Volusia Board to a racially integrated all-day kindergarten and exceptional child center. That closing is also not at issue here. The closing of Campbell and the conversion of Volusia Avenue school made it impossible to accommodate in nearby schools all of the Negro elementary school children living in the densely populated core area of Daytona Beach and Holly Hill. (Neither Campbell nor Volusia Avenue appears on exhibits G and I.)