Arlam CARR et al., Plaintiffs-Appellants,

v.

MONTGOMERY COUNTY BOARD OF EDUCATION et al., Defendants-Appellees.

No. 29521.

United States Court of Appeals, Fifth Circuit.

June 29, 1970.

Soloman S. Seay, Jr., Fred D. Gray, Montgomery; Ala., Jack Greenberg,

James M. Nabrit, III, Norman J. Chachkin, New York City, Jerris Leonard, Asst. Atty. Gen., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

Joseph D. Phelps, Vaughan H. Robison, Montgomery, Ala., for defendants-appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This school desegregation case represents another segment of the long and tortuous journey we have traveled from *Brown I*[1] and *Brown II*[2] through such waystations as *Jefferson*,[3] *Green*,[4] *Alexander*,[5] and *Singleton III*.[6] The question now before us is the constitutional sufficiency of the latest plan of desegregation approved by the district court for the Montgomery County, Alabama, school system.

The Montgomery system is a unified city-county system, including the rural areas of the entire county as well as the urban area of the City of Montgomery. The system operates 57 schools—38 elementary schools, 14 junior high schools, and 5 highschools.[7] Included within the system are almost 39,000 students, approximately 57 percent white and 43 percent black.

Judicial efforts to desegregate the Montgomery County schools began in 1964, when the present action was first

1. Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

2. Brown v. Board of Education of Topeka, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L. Ed. 1083.

3. United States v. Jefferson County Board of Education, 5 Cir. 1966, 372 F.2d 836, aff'd on rehearing en banc, 1967, 380 F.2d 385, cert. denied sub nom. Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103.

4. Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716.

5. Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (per curiam).

6. Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211 (en banc), rev'd in part sub nom. Carter v. West Feliciana Parish School Board, 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (per curiam) (reversal limited to the issue of *timing* of student desegregation).

7. These figures represent the number of schools which are to be operated during the 1970–71 school year under the desegregation plan approved by the district court.

filed in the district court and the United States was designated as *amicus curiae* by the court. Since that time the district court has retained jurisdiction to supervise and evaluate the progress of the Montgomery County Board of Education.[8]

On August 19, 1969, the district court found that the freedom-of-choice plan which had been in effect in the Montgomery school system since 1967 had not been effective in disestablishing the dual school system and offered no realistic promise of being effective in the reasonably near future. Accordingly, the court directed the United States, through the use of educational experts in the Department of Health, Education and Welfare (HEW), to study the Montgomery system and to formulate and submit a desegregation plan on or before January 15, 1970. The Board was given fifteen days from the date of the submission of the HEW plan to submit an alternate plan.

Pursuant to the mandate of the court, both an HEW plan and a Board plan were submitted. The Board plan— which is essentially the HEW plan with certain modifications and refinements— includes (1) the closing of certain schools, (2) the pairing of certain rural schools, (3) neighborhood zoning of schools within the City of Montgomery, and (4) imaginative use of the transportation system utilized to bring students from non-zoned rural areas to schools within the City of Montgomery. The Board's projections for the 1970–71 school year indicate that under this plan there will be no all-white schools and only one all-black school in the entire county.

After an evidentiary hearing on February 24, 1970, the district court entered an order on February 25, 1970, adopting the Board plan. Included in the district court's order were all the requirements set forth in the opinion of this court in *Singleton III*. The plaintiffs have appealed, claiming that the plan ordered by the court is deficient in several respects.[9]

In deciding this appeal we note at the outset that this court has previously analyzed school desegregation plans in terms of a sextet of indicia—student bodies, faculty, staff, transportation, extracurricular activities, and facilities. As we said in Ellis v. Board of Public Instruction of Orange County:

"In Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, the mechanics of what must be done to bring about a unitary system were outlined. They were stated in terms of eliminating the racial identification of the schools in a dual system in six particulars: composition of student bodies, faculty, staff, transportation, extracurricular activities, and facilities. 391 U.S. at 435, 88 S.Ct. 1689. It was such dual systems, organized and operated by the states acting through local school boards and school officials, which were held unconstitutional in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I), and which were ordered abolished in Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).

"In *Green* the court spoke in terms of the whole system—of converting to a unitary, nonracial school system from a dual system. Then, in Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, the court pointed to the

8. For a discussion of the interaction between the court and the Board see United States v. Montgomery County Board of Education, 1969, 395 U.S. 225, 228–231, 89 S.Ct. 1670, 23 L.Ed.2d 263, 268–270.

9. This appeal was expedited in accordance with the procedures outlined in Singleton

v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, 1222 (en banc), rev'd in part on other grounds sub nom. Carter v. West Feliciana Parish School Board, 1970, 396 U.S. 290, 90 S. Ct. 608, 24 L.Ed.2d 477.

end to be achieved. The result, if a constitutionally acceptable system may be said to exist, must be that the school system no longer operates as a dual system based on race or color but as a 'unitary school * * * [system] within which no person is to be effectively excluded from any school because of race or color' 396 U.S. at p. 20, 90 S.Ct. at p. 30, 24 L.Ed.2d at p. 21." Ellis v. Board of Public Instruction of Orange County, 5 Cir. 1970, 423 F.2d 203, 204.

In the present case the district court held that the Board plan is "realistic and feasible" and "will accomplish what the law requires, that is, the complete disestablishment of the dual school system based upon race in the operation of the Montgomery, Alabama, public school system." Having examined the record before us, we agree.

█ The plaintiffs contend that this case should be remanded for the adoption of a more effective plan, but their arguments in behalf of this position are decidedly unpersuasive. Their first argument is a rather generalized contention that the district court could have done a better job, and consequently that we should remand to give the court another chance. We are told that some better plan should be adopted to increase the percentage of minority-race students in some of the schools and that the court should have required more pairing of schools. We reject this argument because the plaintiffs are asking us, in effect, to substitute our judgment for that of the district court. The plaintiffs are expressing displeasure with certain aspects of the plan, but in our view they cannot point to any basic flaw in the plan's overall effectiveness. On the contrary, our examination of the record indicates that the plan adopted by the court below is in accord with the mandates of the Supreme Court and this court and is a workable, viable plan to disestablish the dual school system in Montgomery County. In these circumstances, the fact that we might have handled some minor details differently had we been considering the matter in the first instance is irrelevant. Though a desegregation order entered by a district court is certainly not graven in stone, we are most reluctant to reject a workable desegregation plan on the basis of arguments directed toward miniscule portions of the overall scheme. The plan submitted by the Board is a feasible plan which disestablishes the dual school system, and we think the district court was correct in granting its approval.

█ The plaintiffs' second argument has to do with the closing of three specific schools—Hale Elementary, McDavid Elementary, and Booker T. Washington High School. Each of these schools has been operated in the past as an all-black school. The plaintiffs take the position that the Board's decision to close these schools was motivated by (1) a desire to avoid situations in which white students are in the minority in a formerly black school and (2) a desire to place the burden of desegregation on black students rather than on white students by closing black schools and making Negro students travel to formerly white schools. We cannot find support for this position in the record. On the contrary, the record indicates that each of these schools has an inferior physical plant or site. Thus it appears that the Board's proposal to close these schools was based on sound, non-racial considerations. Moreover, in response to the plaintiffs' argument we note that the Board plan (1) also includes the closing of some predominantly white schools and (2) envisions a number of situations in which white students will be in the minority in a formerly black school. We therefore conclude that the closing of the three schools here involved is simply a reasonable part of a workable plan of desegregation.

█ "There is no universal answer to complex problems of desegregation;

there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance." Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 439, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716, 724. In Montgomery County the Board of Education has utilized the tools of school closings, zoning, pairing, and transportation routing to achieve a plan which appears to eliminate the racial identity of the schools. As far as the record reveals, nothing with regard to faculty, staff, transportation, extracurricular activities, or facilities will indicate that any school in Montgomery County is designed to receive white children or Negro children; on the contrary, each school will be intended to receive "just children." Moreover, with respect to the composition of student bodies the projections under the plan are impressive. There will be no all-white schools. There will be only one all-black school—an elementary school "deep in the heart of a predominantly Negro residential area." [10] Even if this school should remain all-black for the near future, its students will go on to attend junior highs and high schools with students of both races. The Supreme Court has taught us that "[t]he obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary schools." Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, 21. The Montgomery County Board of Education has proposed a plan which fulfills that obligation; the district court has ordered the plan implemented; and we approve the district court's order.

■ Because of a recent development in the law, however, we must remand to the district court for modification of one portion of its order—the majority-to-minority transfer provision. In cases decided since the entry of the district

court's order on February 25, 1970, we have held with regard to majority-to-minority transfer provisions that (1) all transferring students must be given transportation if they desire it and (2) transferees are to be given priority for space. Davis v. Board of School Commissioners of Mobile County, 5 Cir. 1970, 430 F.2d 883, 888 (opinion dated June 8, 1970); Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 426 F.2d 1364, 1369 (opinion dated May 5, 1970). These requirements are designed to increase the effectiveness of the majority-to-minority transfer provision as a tool "to alleviate segregation which still remains in the system as the result of residential patterns." Taylor v. Ouachita Parish School Board, 5 Cir. 1970, 424 F.2d 324, 328. We therefore remand to the district court for modification of its desegregation order to conform with these requirements.

■ In deciding this case we are conscious that it is not for us to blueprint every detail and write every specification for the construction of a desegregated school system. That burden is on the school board in the first instance. Once a school board has acted, however, the courts have a solemn obligation to determine whether the structure designed by the school board will house a unitary school system. This obligation is unremitting, and there can be no abdication, no matter how temporary. Accordingly, any imprimatur of judicial approval must be entered with the caveat that until construction of a unitary system is completed, change orders, when appropriate, will be issued to ensure that the designed structure in fact accommodates a unitary system and not a bifurcated one.

In conclusion, we take note of the fact that since 1964 the Montgomery County school system has been under sensitive judicial surveillance. The record indicates that the responses of the Board of

---

10. This phrase, which is taken from the Board's desegregation plan as presented to the district court, is an accurate description of the one all-black school.

Education have not been animated by excessive reluctance, recalcitrance, or a desire to frustrate. Moreover, just as the Board has been responsive to the mandates of the district court, so the district court has been sensitive to the mandates of this court and of the Supreme Court.[11] In sharp contrast to other situations in this Circuit, the plaintiffs in Montgomery County have never before found it necessary to appeal to this court from one of Judge Johnson's desegregation orders.[12] It is significant that even today, when we remand for modification of Judge Johnson's latest order, we do so only because of decisions of this court which were handed down *after* his order was entered. If more district courts and more school boards had been as sensitive as those here involved to the requirements of the law, the path to the goal of school desegregation in this circuit would have been infinitely smoother than it has been.

For the reasons given above we do not sustain any of the plaintiffs' objections to the desegregation order entered by the district court, but we remand to the district court for modification of the majority-to-minority transfer provision of its order in light of recent opinions of this court. The district court, of course, will continue to retain jurisdic-

tion to evaluate the performance of the Montgomery County school system to the end that the dual system will not be or tend to be reestablished.

It is so ordered.

---

11. This is not the first time an appellate court has taken note of the exemplary record of this district judge and the responsiveness of this school board. On the only previous appeal from a desegregation order affecting Montgomery County, both this court and the Supreme Court adverted to these factors. See Montgomery County Board of Education v. Carr, 5 Cir. 1968, 400 F.2d 1 (opinion by Judge Gewin, noting the good faith of the Board and quoting complimentary remarks by Judge Johnson concerning the Board); United States v. Montgomery County Board of Education, 1969, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (opinion by Mr. Justice Black, commenting favorably upon the performance of the judge and the Board).

12. The only previous appeal to this court concerning desegregation in Montgomery

County was taken by the Board. The Board appealed from an order entered by the district court, and a panel of this court modified the order to make the requirements concerning faculty desegregation less stringent. Montgomery County Board of Education v. Carr, 5 Cir. 1968, 400 F.2d 1. One member of the panel (Judge Thornberry) dissented in an opinion reported at 402 F.2d 782. A petition for rehearing en banc was denied by an evenly divided court; dissents from the denial of the petition for rehearing en banc are reported at 402 F.2d 784–787. On certiorari the Supreme Court reversed this court and reinstated the district court's order in its entirety. United States v. Montgomery County Board of Education, 1969, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263.