432 F.2d 819
 Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor-Appellant,
National Education Association, Inc., Plaintiff-Intervenor,
v.
CITY OF TROY BOARD OF EDUCATION et al., Defendants-Appellees.
 No. 30150.
 United States Court of Appeals, Fifth Circuit.
 August 24, 1970.
 
 Wayman G. Sherrer, U. S. Atty., E. Ray Acton, Asst. U. S. Atty., Birmingham, Ala., Solomon S. Seay, Jr., Montgomery, Ala., Ira De Ment, U. S. Atty., Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., David D. Gregory, Robert Pressman, Attys., Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for appellant.
 Oliver Brantley, Troy Ala., Thomas Thagard, Jr., Montgomery, Ala. for appellees.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 Again we are required to pass upon a district court order approving a school desegregation plan. Involved is the plan for the City of Troy school system located in Pike County in southeast Alabama. The order of the district court is dated the 12th day of June 1970 and the United States of America, plaintiff-intervenor and amicus curiae, together with the plaintiffs, are the appellants. The United States, the only appellant who has filed a brief,[1] frames the question presented as follows:
 
 
 2
 Whether the district court erred in approving a plan for the City of Troy school system under which all regular classes (grades 1 to 3) in the Oakland Heights School would be all-black, when the record contained a pairing proposal formulated by the Office of Education which would fully desegregate the school.[2]
 
 We affirm.[3]
 
 3
 The background and history of this case are substantially identical with that of our former case of Lee, et al. v. Macon County Board of Education, et als.[4] The order here involved was issued by the same three-judge court (composed of Senior Circuit Judge Richard T. Rives and District Judges H. H. Grooms and Frank M. Johnson, Jr.) which court has dealt with the desegregation of numerous school systems in the State of Alabama over a period of years. We fully agree with the assertion[5] that this district court has had wide experience and is thoroughly familiar with the system of public education of the State of Alabama generally and with a vast number of individual school systems. Many of the problems involved in the numerous school systems of the state are common to each system individually and common solutions frequently apply to those problems.
 
 
 4
 By order dated the 24th day of June 1970 the three-judge district court transferred the Troy School System case, together with other cases, to the jurisdiction of the respective United States District Courts in Alabama in which the school systems were geographically located pursuant to 28 U.S.C. § 1404(a).[6] As pointed out in the government's brief, this District Court, between January and June of 1970, entered orders approving terminal desegregation plans involving approximately 61 school systems in Alabama in addition to numerous other orders on related issues.
 
 
 5
 On October 23, 1969 the district court ordered the Troy City Board of Education (the Board) to file its proposed plan for the effective and complete disestablishment of its dual school system based upon race, effective with the commencement of the school year 1970-71. The Board filed a plan on January 15, 1970 but on March 23, 1970 the court determined that the plan filed by the Board did not include the Laboratory School, operated by Troy State University, as part of the school system.[7] Thereupon the Board was ordered to file an amended plan of desegregation which it did on April 1, 1970. A hearing was conducted with respect to that plan, with all parties being represented, and the court allowed the Board additional time within which to submit further plans for the complete and effective disestablishment of the dual school system. The United States Office of Education (HEW) was directed to assist in the preparation of plans and was granted time to file alternatives to plans proposed by the school system, if deemed necessary. The Board filed its final plan on April 23, 1970, which incorporated some portions of the original plan filed on January 15, 1970. HEW also submitted a plan. Upon consideration of the final plan proposed by the Board, the responses thereto, the proposals by the United States and the plaintiffs, and other matters presented to the court during a hearing held on May 8, 1970 in connection with the proposed plan of the School Board and all objections thereto, the plan filed by the Board on April 23 was ordered modified and supplemented by the court. As so modified and supplemented that plan was approved and ordered to be placed into effect not later than the commencement of the 1970-71 school year.
 
 
 6
 In its order approving the plan, the court gave specific, clear and unequivocal directions with respect to the desegregation of faculty and other staff, student bodies, the attendance of students who desired to enter the system from outside areas and those desiring to transfer to public schools outside the system, school construction and site selection, majority to minority transfer, extracurricular activities, facilities and programs, and all other facets related to a full, complete and terminal desegregation plan of the Troy School System. There will be no all white schools, and no all black schools. In one elementary school the first three grades will be all black. There is no transportation system. With the exception of the question presented concerning grades 1 to 3 of the Oakland Heights School, there is no contention that a unitary school system will not be achieved or that the court did not correctly consider and decide all matters required by Green v. County School Board of New Kent Co.[8] and the numerous decisions of this court dealing with school desegregation.[9]
 
 
 7
 We come now to consider the Oakland Heights Elementary School which is the sole object of complaint by the government with respect to the order of the three-judge district court. Oakland Heights is located approximately in the center of an all-black residential neighborhood in the northeast quadrant of the city. For the year 1970-71 it appears to be reliably estimated that this school will be attended by approximately 457 students. Of that number, 354 will be blacks and 103 whites. The faculty and staff of the school will be fully integrated. In addition to the first three grades of grammar school, a kindergarten and classes for exceptional students will be conducted at Oakland Heights School. The kindergarten and the classes for exceptional students will be fully integrated with 103 whites and 142 blacks. There will be 212 blacks in the first three grades who are approximately 6, 7 and 8 years of age. Even though the first three grades will remain all black, the school cannot properly be classified as all black in view of the attendance of white students in the kindergarten and in the classes for exceptional children, in addition to the fact that the faculty and staff are fully integrated. Obviously, after three years, under the plan approved by the court, black children in the first three grades will move on to other schools totally and completely integrated. These students will attend integrated schools for 9 of the 12 grades of their public school career. The area in which Oakland Heights is located has limited access by way of streets. In one section it is bounded by railroad tracks of two different railroad systems and in another area there is a ravine.
 
 
 8
 The Troy Elementary School which the government wishes to pair with Oakland Heights as to grades 1 through 4, is located on the opposite side of the City of Troy and somewhat to the southwest from Oakland Heights. If children were required to travel from Oakland Heights to Troy Elementary School, it would be necessary for them to pass through the downtown area.[10] As indicated earlier, there is no transportation provided, except that special arrangements have been made to pay parents for the transportation of exceptional students attending Oakland Heights. Apparently the school is well equipped and has ample space for the accommodation of those students expected to attend. It is fair to say that Oakland Heights is a neighborhood school for children of very tender age.
 
 
 9
 Pike County adjoins Montgomery County, Alabama. We have recently considered the Montgomery County System.[11] The two systems have many things in common, although the Troy System is much smaller than the Montgomery County School System. What we said in the Carr case is applicable here. We quote from that opinion:
 
 
 10
 We are told that some better plan should be adopted to increase the percentage of minority-race students in some of the schools and that the court should have required more pairing of schools. We reject this argument because the plaintiffs are asking us, in effect, to substitute our judgment for that of the district court. The plaintiffs are expressing displeasure with certain aspects of the plan, but in our view they cannot point to any basic flaw in the plan's overall effectiveness. On the contrary, our examination of the record indicates that the plan adopted by the court below is in accord with the mandates of the Supreme Court and this court and is a workable, viable plan to disestablish the dual school system in Montgomery County. In these circumstances, the fact that we might have handled some minor details differently had we been considering the matter in the first instance is irrelevant. Though a desegregation order entered by a district court is certainly not graven in stone, we are most reluctant to reject a workable desegregation plan on the basis of arguments directed toward miniscule portions of the overall scheme. The plan submitted by the Board is a feasible plan which disestablishes the dual school system, and we think the district court was correct in granting its approval.[12]
 
 The opinion goes on to state:
 
 11
 As far as the record reveals, nothing with regard to faculty, staff, transportation, extracurricular activities, or facilities will indicate that any school in Montgomery County is designed to receive white children or Negro children; on the contrary, each school will be intended to receive "just children." Moreover, with respect to the composition of student bodies the projections under the plan are impressive. There will be no all-white schools. There will be only one all-black school — an elementary school "deep in the heart of a predominately Negro residential area." Even if this school should remain all-black for the near future, its students will go on to attend junior highs and high schools with students of both races.[13]
 
 
 12
 Again we must state, as we did in Carr, that we cannot assume the role of an architect to furnish blueprints and provide specifications for the construction of every facet of a desegregated, unitary school system. The primary responsibility lies with the Board. When the Board presents a plan to the court, it is the responsibility of the court to determine whether the plan is designed to create and provide a unitary school system. In cases where we have felt that a unitary system did not result from a proposed plan, we have not been hesitant to strike it down or require appropriate modifications. In the case before us we are convinced that the plan as modified and supplemented by the order of the district court fully accomplishes the goal of establishing a unitary school system.
 
 
 13
 In summary we feel it appropriate to state that the plan approved by the district court for the Troy School System will achieve a more satisfactory system than some plans which have been approved in our recent decisions. This is not a critical comment; it only serves to illustrate the fact that "There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance."[14] We find no justification for disturbing the order simply because the first three grades of one school in the entire system, the Oakland Heights School, will be all black when it is realized that the faculty and staff of that school are fully integrated and that the kindergarten and special classes of the school are also fully integrated.[15]
 
 
 14
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Counsel for the individual plaintiffs participated in the hearings before the district court and filed a notice of appeal but no brief has been filed on behalf of the individual plaintiff-appellants
 
 
 [2]
 In the conclusion to its brief the government requests that the order of the district court be reversed insofar as it approved the Board's proposal forTroy Elementary and Oakland Heights schools and that the case be remanded with instructions to pair both Oakland Heights and Troy Elementary for grades 1 to 4.
 
 
 [3]
 Under the stringent requirements of Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, which this court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852, this court has judicially determined that the ordinary procedures for appellate review in school segregation cases have to be suitably adapted to assure that each system, whose case is before us, "begin immediately to operate as unitary school systems." Upon consideration of the record the court has proceeded to dispose of this case as an extraordinary matter. Rule 2, FRAP
 
 
 [4]
 429 F.2d 1218 (5th Cir. 1970)
 
 
 [5]
 See Lee, et al. v. Macon County Board of Education, et als., 429 F.2d 1218 (5th Cir. 1970).
 
 
 [6]
 The three-judge court was initially constituted in 1964 to consider a constitutional challenge to Alabama's Tuition Grant law. Lee v. Macon County, 231 F.Supp. 743, 746 (M.D.Ala.1964). Although the order from which this appeal was taken was entered by the three-judge court, appeal properly lies to this court because the issues giving rise to the order from which the appeal was taken were not "required" to be heard by a three-judge courtSee 28 U.S.C. §§ 1253, 1291.
 
 
 [7]
 The Laboratory School was formerly operated by Troy State University. It is asserted that it is located in the most "affluent" section of the City of Troy. It was attended only by white students. Troy State University has now relinquished all interest in the operation of the school and the city system will commence to operate it during the coming school year in the facilities heretofore used. When the new junior high school building is completed, the old junior high school will be used as an elementary school, and the quarters of the Laboratory School will be changed
 
 
 [8]
 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968)
 
 
 [9]
 Except for the refusal of the district court to approve the HEW pairing alternative for Oakland Heights and Troy Elementary, the government concedes in its brief that all provisions in the court's order are in accordance with proper standards
 
 
 [10]
 In its brief the government refers to distances "measured as the crow flies." We reject this standard of measurement
 
 
 [11]
 Carr v. Montgomery County Bd. of Ed., 429 F.2d 382 (5th Cir. 1970)
 
 
 [12]
 429 F.2d at page 385
 
 
 [13]
 429 F.2d at page 386
 
 
 [14]
 Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716, 724
 
 
 [15]
 Singleton v. Jackson Municipal Separate School Dist., 430 F.2d 368 (5th Cir. 1970); Davis, et al. v. Bd. of School Commissioners of Mobile County, et al., 430 F.2d 889 (5th Cir. 1970); Lee, et al. v. Macon County Board of Education, et als., 429 F.2d 1218 (5th Cir. 1970); Hightower v. West, 430 F.2d 552 (5th Cir. 1970); Carr v. Montgomery County Board of Education, 429 F.2d 382 (5th Cir. 1970); Mannings v. Board of Public Instruction of Hillsborough County, 427 F.2d 874 (5th Cir. 1970); Andrews v. City of Monroe, 425 F.2d 1017 (5th Cir. 1970); Ellis v. Board of Public Instruction of Orange Co., 423 F.2d 203 (5th Cir. 1970)