453 F.2d 524
 Anthony T. LEE et al., Plaintiffs-Appellees, United States
of America, Plaintiff-Intervenor and Amicus
Curiae, National Education Association,
Inc., Plaintiff-Intervenor,
v.
MACON COUNTY BOARD OF EDUCATION et al., Defendants, Alabama
State Board of Education, Defendant-Appellant.
 No. 30944.
 United States Court of Appeals,
Fifth Circuit.
 July 15, 1971.
 
 T. W. Thagard, Jr., Montgomery, Ala., J. B. Blackburn, Bay Minette, Ala., for defendant-appellant.
 Solomon Seay, Jr., Montgomery, Ala., Joe Ritsch, David L. Norman, Brian K. Landsberg, Justice Dept., Civil Rights Div., Washington, D. C., Ira De Ment, U. S. Atty., Montgomery, Ala., for plaintiffs-appellees.
 Thomas D. Samford, III, Opelika, Ala., for Auburn University amicus curiae.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal arises from an extensive memorandum opinion, 317 F.Supp. 103, and decree which concerned twenty-seven trade schools and seventeen junior colleges in Alabama, and which was entered on August 14, 1970 by a three-judge court.[1] The decree of the court dealt with substantially all facets of integrating such trade schools and junior colleges.[2] The trade schools are not involved on this appeal. Only one provision of the court's decree (Paragraph 7) is in issue. That provision relates to two junior colleges: Mobile State Junior College (Mobile State) located in the city and county of Mobile, Alabama; and the James H. Faulkner Junior College (Faulkner) located in Bay Minette, Baldwin County, Alabama.
 
 
 2
 The appellant, Alabama State Board of Education (State Board), objects to Paragraph 7 which enjoins it from:[3]
 
 
 3
 7. Failing to establish a definite attendance area, effective not later than the commencement of the 1971-72 school year and comprised of Mobile and Washington Counties, for the Mobile State Junior College; and failing to establish a definite attendance area, effective not later than the commencement of the 1971-72 school year and comprised of Baldwin County and adjacent areas to the north and east, for the James H. Faulkner Junior College. Students residing in one attendance area will not be permitted to enroll in programs offered in the junior college located outside their attendance zone unless said programs are not and cannot be offered in their attendance zone.[4]
 
 
 4
 The state system of junior colleges as it is now operated was designed under authority of the Alabama Trade and Junior College Authority Act of 1963. Code of Alabama, Title 52, Sec. 509 (78)-(96) (Recomp.1958). The stated purpose of this system is to make available and accessible at least two years of post high school education to nearly every student in the state.
 
 
 5
 Six basic principles have been adhered to by state administrators in attempting to achieve this goal: (1) an "open-door" admission policy which permits the acceptance for enrollment of any high school graduate; (2) an offering of a broad range of educational opportunities including remedial, technical and professional programs; (3) an extensive personnel program to meet the needs of individual students; (4) a capable and committed staff; (5) low student cost; and (6) an awareness of and sensitivity to community needs and a strong community orientation in the individual junior colleges. These colleges are located throughout the State of Alabama and are designed to be commuter colleges. In a number of instances bus transportation has been provided and the aim has been to attract and motivate students to attend these schools by convenient geographic locations.[5] Attendance at all junior colleges in the state is purely voluntary.
 
 
 6
 Six-hundred ninety-nine (699) white students and eight-five (85) black students attend Faulkner. Eight-hundred twenty-two (822) black students and seven (7) white students attend Mobile State.[6] Most students commute to attend the schools daily, but Faulkner maintains a dormitory which originally cost $1,500,000 upon which there is an annual debt service of approximately $103,000. Approximately two hundred sixteen (216) students are housed in the dormitory, some of whom are black. Faulkner was newly constructed in the year 1965. Mobile State was established in 1936 as a two-year branch of Alabama State University, a four-year Negro college located in Montgomery, Alabama. It acquired an independent status as a junior college in 1965. It is located in a heavily concentrated Negro residential area in downtown Mobile from which it draws most of its student body.
 
 
 7
 The district court concluded that the evidence reflected certain deficiencies in the physical facilities and in the curriculum of Mobile State. It directed that proper steps be taken to correct these deficiencies at Mobile State in order to make Mobile State comparable in those respects to Faulkner. The court required reports with respect to action taken to comply with its decree. Two reports have been filed.
 
 
 8
 On August 25 the Alabama Trade School and Junior College Authority[7] reported to the court that it had designed and was in the execution of a plan for construction and renovation designed to equalize the physical facilities of Mobile State with Faulkner. This construction and renovation involves a capital outlay of approximately $1,115,000 for the construction of a new gymnasium and classrooms building, renovation of the present physical education and physical science building to be used as a bookstore and student food service center, and the renovation of the present administration and classroom building so as to provide for more classrooms and administrative offices. A library has been constructed recently at a cost of approximately $750,000. The agency has committed itself to allocate substantial additional funds for the purchase of buses and computer equipment. According to the report the physical facilities of Mobile State, when all authorized construction and renovation are completed, will equal those of Faulkner and in some respects will exceed them.
 
 
 9
 Subsequent to the filing of this appeal, the State Board of Education filed a report with respect to course offerings as directed by the August 14, 1970 decree. According to the report the curriculum has been revised and the following additional courses are now being offered at Mobile State:
 
 
 10
 1. Associate in Science Degree Programs in Office Administration, Pre-Architecture, Pre-Forestry, Pre-Mathematics, and Pre-Veterinary Medicine.
 
 
 11
 2. Associate in Applied Science Degree Programs in Architectural Drafting, Architectural Technology, Computer Science Teachnology (Commercial), Computer Science Technology (Scientific), Drafting Technology, Engineering Technology, Management and Supervision Technology.
 
 
 12
 3. Associate in Arts Degree Programs in Social Science and Speech.
 
 
 13
 Uncontested on this appeal are provisions of the decree aimed at eradicating present racial imbalance; these include requirements for substantial faculty integration, for significant improvement of physical facilities, and for the concomitant development and expansion of the curriculum at Mobile State. Full compliance with these uncontested provisions would furnish a reasonable basis for hope and optimism that substantial integration will be achieved at the two junior colleges under consideration. It is the responsibility of state authorities to eliminate the racial character of these important schools. This court will give careful consideration to efforts exerted in the discharge of this state responsibility. Failure or neglect will require further judicial scrutiny and the consideration of additional remedies.
 
 
 14
 Well established principles of public school desegregation have not been applied generally to institutions of higher learning in the same manner in which they have been applied to public schools below the college level. This court feels some reluctance to require school attendance zones for college level institutions.[8]
 
 
 15
 In view of the facts presented and developments which have taken place since the decree of the district court (as reflected by reports filed and in the record), we conclude to stay and postpone the effective date of that portion of the court's decree about which complaint is made on this appeal (Paragraph 7 above). It is, therefore, ordered, adjudged and decreed that compliance with the provisions of Paragraph 7 of the district court's decree be, and the same is hereby postponed and stayed until the commencement of the school year 1972-73, or until further order of this court. All other provisions of the district court's decree shall remain in full force and effect. Copies of the reports required by the district court shall also be filed with the clerk of this court for information of the court. Jurisdiction of the cause is retained for further consideration.[9]
 
 
 16
 So ordered.
 
 
 
 [1]
 The three-judge court was initially constituted in 1964 to consider a constitutional challenge to Alabama's Tuition Grant law. Lee v. Macon County, Bd. of Ed., 231 F.Supp. 743, 746 (M.D.Ala.1964). Although the order from which this appeal was taken was entered by the three-judge court, appeal properly lies to this court because the issues giving rise to the order from which the appeal was taken were not "required" to be heard by a three-judge court. See 28 U.S.C. Secs. 1253, 1291. See Lee v. City of Troy Board of Education, 432 F.2d 819 (5th Cir. 1970)
 
 
 [2]
 After this appeal was perfected and the briefs of the parties were filed, the court requested additional information and supplemental briefs. Thereafter, a Judge of the court conducted a conference with the attorneys for the parties in accordance with the provisions of Rule 33 of the Federal Rules of Appellate Procedure
 
 
 [3]
 The decree enjoins the Alabama State Board of Education and the individual members thereof, and the State Superintendent of Education, their agents, successors, and all those acting in concert with them
 
 
 [4]
 The order also required: (1) facilities be expanded and curriculum developed at Mobile State Junior College so that it would be comparable to Faulkner Junior College and so as to attract a large proportion of white as well as Negro students; (2) complete elimination of all duplicate course offerings in the dual trade schools in five Alabama cities; (3) immediate faculty exchange in areas with dual trade and junior colleges and assignment of faculty and staff so that by September, 1971 the ratio of Negro to white teachers in each of the junior college and trade schools is substantially the same as such ratio is for the Negro and white population in the State of Alabama. (This provision of the order was subsequently modified and amended by the court.); (4) special efforts to recruit students who are of the race different from that of the students which the institution was originally designed to serve
 
 
 [5]
 At one time Faulkner and Mobile State maintained dual or overlapping bus routes. The Justice Department requested the State Board to terminate this practice; the State Board agreed, and the dual routes were eliminated. The State Board contends that soon after this practice was terminated, Faulkner lost a substantial number of students including some who resided in the dormitory; and that there was no resulting increase in attendance at Mobile State. In its brief the government asserts, "The elimination of these dual routes has accomplished little desegregation at these institutions . . ."
 
 
 [6]
 Also involved in this litigation were two junior colleges in Jefferson County, Alabama-Wenonah State and Jefferson State. The racial imbalance at these two schools equals, if not exceeds, the imbalance at Mobile State and Faulkner. Many more students are involved. The opinion and decision of the district court make no explanation as to why a requirement similar to Paragraph 7 was not applied to the two schools in Jefferson County. At conference (see note 2) counsel for the parties were unable to explain this fact
 
 
 [7]
 The Alabama Trade School and Junior College Authority controls the expenditures of capital outlay for junior colleges. It is a party defendant
 
 
 [8]
 See Alabama State Teachers Ass'n v. Alabama Pub. School & College Authority, 289 F.Supp. 784 (M.D.Ala.1968) aff'd. per curiam 393 U.S. 400, 89 S.Ct. 681, 21 L.Ed.2d 631 (1969). But see Norris v. State Council of Higher Educ. for Virginia, 327 F.Supp. 1368 (E.D.Va.1971); Sanders v. Ellington, 288 F.Supp. 937 (M.D.Tenn.1968)
 
 
 [9]
 Retention of jurisdiction by this court shall not suspend or delay full compliance with all other provisions of the district court's decree